## Giles Stanton *v.* the Scranton Traction Company, Appellant, and the City of Scranton.

*Street railways—Removal of snow—Measure of care.*

Any disposition that a street railway makes of snow removed by it from its tracks must be made with due regard to the rights of travel upon the highway, and so as not to interfere needlessly, in a practical sense, with the safety and convenience of persons lawfully using the street in an ordinary way.

*Street railways—Negligence—Removal of snow—Question for jury.*

While it is not impossible that a case may arise where the conditions touching the removal of snow by a street railway are so plain that it will be the duty of the court, taking a practical view, justified by common knowledge and experience, to give the jury binding instructions that the company has exercised all the care in the removal and disposition of the snow that reasonably could be expected, the question as it generally arises falls within the rule that what constitutes negligence where the standard shifts, not according to any common rule, depends upon the facts and circumstances developed at the trial and cannot be determined by the court, but must be submitted to the jury.

*Contributory negligence—Obstacle in highway—Question for jury.*

The fact that the plaintiff saw the obstruction to the highway caused by piled up snow and knew its dangerous character, is not conclusive proof that he was negligent in attempting to pass it. A person who meets with an obstacle may yet proceed if it is consistent with reasonable care so to do and this is a question for the jury, depending upon the nature of the obstruction and all the circumstances surrounding the party.

*Proximate cause—Snow from car tracks and sidewalk.*

Where the driver of a load of hay is upset in the street without fault of his own he is placed in a situation where he is warranted in doing what he reasonably can to right his load; if, in such effort whilst he was about driving his team across the street railway to hitch it to the load, without negligence on his part, he slips on the sloping bank of hard snow, more than a foot high, at the side of the track, caused by defendant's act, such pile of snow may be considered the proximate cause of the injury and it

is useless to speculate as to the remote contribution to the accident incident to the contributions of snow from the sidewalks.

Argued Jan. 11, 1899.   Appeal, No. 29, Jan. T., 1899, by the Scranton Traction Company, from judgment of C. P. Lackawanna Co., Sept. T., 1895, No. 800, on verdict for plaintiff.   Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ.   Affirmed.   Opinion by RICE, P. J.

Trespass.   Before McPHERSON, J., of the 12th judicial district, specially presiding.

It appears from the evidence that in February, 1895, a very severe snowstorm occurred in the city of Scranton, followed by cold weather.   The snow fell to the depth of a foot or more on Capouse avenue, covering the railway tracks of the defendant company and in order to operate their cars the railroad company removed the snow from their tracks and put it on the street on both sides of the track.   It also appeared that the property holders along the line of the street also removed the snow from the sidewalks and threw it into the street in banks so that the snow in the street on each side of the track nearest the sidewalks was quite deep.   Under such conditions the plaintiff came from his home a few miles out of the city, with a load of hay, on February 12.   He came down Capouse avenue, attempted to cross the railway track, but was met by the bank alongside the street.   The hay being on bob sleds was upset and tipped over on the railway track.   At this time he was not injured and suffered no damage, but got his load of hay on and proceeded to sell it and go home again.   On the following Saturday, the 16th of February, he came to Scranton again with another load of hay; came down the same avenue, attempted to cross the track in the same place, and in attempting to turn, by reason of the bank of snow piled up, again upset his hay on the street.   He was not injured in any way by the upsetting of the load of hay and no damage was then done to him or his property.   But in moving about on the street after the accident was over, in his efforts to right his load, he slipped on the snow or ice, fell and injured his hip and it was for damages consequent upon this injury, from so slipping, that he brought this suit.

The court below, McPHERSON, J., charged the jury as follows:

Now, the first matter for your consideration is this: Was this place that has been spoken of here by the witnesses, at which the plaintiff crossed these tracks, a dangerous place? That is the first question for you to consider in the order of time, and in the proper order to consider this case. Was this place dangerous, considered especially as a place where teams crossed the track, because it was in crossing the track that this upset took place? The test to apply to that is this: Was it a safe place for ordinary travel, conducted in the ordinary manner and by the ordinary means under the circumstances that were then presented? You are not to consider whether or not it would have been safe if there had been no snow anywhere else except just at that particular place, but you are to consider it as a place upon a snowy street, a street covered with snow except where the street car tracks were. In other words, the fall of snow is a matter which you must not leave out of your consideration, indeed it is absolutely essential for you to consider it in determining this question, for the snow was there upon the street, and, therefore, in determining whether this was a dangerous place or not, you must consider the fact that the snow was there. It is not to be considered (as it was, I think, argued by the plaintiff's counsel) as if this were a ditch thrown up in the earth, or as if this snow had been dirt laid alongside of the track. That would present an entirely different question, because in such case as that, of course, a trench cut right there in the middle of the street with dirt laid alongside of the track to the height of, a foot, would, without any difficulty, be decided by the court and by any jury to which it was submitted, to be an obstruction, and an unlawful obstruction upon the street; but this was not dirt, and it was not an ordinary trench, it was snow. And in determining whether this was an unsafe place you must consider the habits and customs of the people. In cities like this, and in a climate like this, we all know perfectly well how snow is disposed of. It is impracticable, at present at all events, with the means at our disposal, to take snow bodily off the streets and take it out of the limits of the municipality; it cannot be done. In a few of the cities—I do not know how many—in a few of them—New York comes to my mind, Philadelphia in a less measure—they

do make some effort to dispose of the snow by taking it off the streets in some way, either by loading it and carting it to the river or melting it, but in a city like Scranton, of its size and resources, such effort is not made and is at present impracticable. The snow is taken off the sidewalk and put upon the street as there is nowhere else to put it; and in the same way the snow is taken off the car tracks and put upon the street, as there is nowhere else to put it under present conditions.

Now, while that is true, and while snow is put upon the street, and is left upon the street under the present conditions in Pennsylvania and in the city of Scranton, nevertheless it is the duty of people putting snow there to consider the rights of other persons, namely, those who may have occasion to use the roadway; and they are bound, in putting snow upon the roadway, to leave the street reasonably safe for ordinary travel, conducted in the ordinary manner, always considering the fact that there is snow upon the street. Of course a street cannot be as safe to travel when there is snow upon it as when there is no snow upon it, but we are dealing with a condition of snow, recollect, and, therefore, in determining whether a street is safe I must ask you to determine the question whether a street with snow upon it is safe for ordinary travel, conducted in the ordinary manner. You are not to apply to it the test that you would apply to a smooth asphalt street with nothing upon it; but here is a street with a foot of snow fallen upon it, with snow taken from the pavement and put upon part of it, and with snow taken from the street car tracks and also put upon part of it. In considering all these circumstances, was this particular place that we are now dealing with, this place where the plaintiff crossed the tracks, was that safe for the ordinary purposes of ordinary travel? If it was, then of course there is no further question in the case at all, for the plaintiff then has suffered injury by an accident for which no one is responsible, and he must suffer the injury, painful as it has been. He has no right to put his injury upon the shoulders of somebody else and ask them to bear it, unless he can show some fault upon their part. And I repeat, if this place was not dangerous, tested by the tests I have just given to you, then nobody was at fault, and he has suffered a mere accident for which he cannot call upon either the city or the traction com-

pany to indemnify him or to make him whole. That, there-
fore, is the first question for you to consider. If the place was
not dangerous for crossing with teams, then the injury was the
result of an accident, and there can be no recovery in the
present case.

If, however, you find, tested by the rule I have just given to
you, that the place was a dangerous place, then the next ques-
tion in order of time for you to consider is, Whether the plaintiff
was negligent himself, and whether his negligence contributed
to his injury? Now, that may happen in either one of two ways.
If the place was dangerous—and of course now we are proceed-
ing upon the assumption that it was a dangerous place—if it
was, he certainly knew of it, for he had been over the ground at
this very place, within a few feet, only three or four days before,
and had had an upset at this particular spot, within a few feet
of it. He was bound, of course, to know the ordinary operation
of the laws of nature, and to know that if the weather got colder
snow would freeze; so that the fact, the mere fact that the snow
was soft when he crossed there on Tuesday would not tend to
change the condition. He must have known, he is held to have
known, and did know, no doubt, that the snow was frozen upon
Saturday when he came along on the same road and attempted
to cross at about the same place.

Now, if therefore he knew of this place, as he did know of
it beyond any controversy, and if there were other and safer
roads which he could have taken to bring his load into town,
then he had no right to take this road in question and expose
himself to danger, and call upon somebody else to bear the con-
sequences of it. To put it in other words, if knowing of this
dangerous place, he nevertheless went on and attempted to
cross, and suffered injury thereby, he took the risk of it him-
self and cannot recover in the present case. If, however, as is
argued to you here, and there is evidence upon the subject,
there was no other safer road which he could take to get into
the city, then he would not be obliged to stay at home indefi-
nitely simply because all roads were more or less dangerous.
He was bound to select the safest road; and, to put it in a few
words, if there was another and a safer road which he could
have taken, it was his duty to have taken it, and if he did not
do so but went on and took the risk, then he cannot recover in

·the present case.   If these other roads, however, were equally unsafe, were equally obstructed so that he could not have got on any better upon any one of these, then I say he would not be debarred from choosing this particular street; but in the use of it, and especially when he approached the place which he knew to be dangerous, he would be bound to exercise the proper measure of care according to the circumstances ; particularly as he knew that it was a dangerous place, and that he was approaching it, he would be bound to exercise due and proper care, and you must test that.   You must apply the test of ordinary care under these circumstances, especially considering that he did know that the place was dangerous, caused by his previous experience.   It was his duty to exercise, I repeat, proper and reasonable care in attempting to cross this street.   He has given you an explanation of why he attempted to cross it, and assuming that fact to be true—it does not seem to be controverted—it was a reasonable excuse, as I have no doubt the jury would find.   These sleighs were hitched upon the same side upon which he was traveling; no drivers were in sight; he was not bound to get down to try to find them and have them remove their teams. . Nothing was left for him, therefore, except to cross the street, and he attempted to cross it, and, as you have heard, the sleigh upset.   Upon that point you must consider what he did, both then and afterwards, up to the time when he was hurt.   Did he exercise proper or reasonable care in looking out for his own safety in crossing the street before the upset occurred?   Did he do what was reasonable and proper under all the circumstances, considering the amount of snow, the degree to which it may have been piled up, the width of the street, the facility which he had for turning, the load that he had upon his sleigh, the character of the sled that he had, his team—all these matters—determine whether in attempting to cross he exercised ordinary prudence and care under all these circumstances.   If he did not, if he was careless, negligent in attempting to make this crossing, and the sleigh upset by reason of that, then he has no further claim in the case.   If he was reasonably careful in attempting to cross, then you will still have to consider whether he continued to be careful in what afterwards happened.

If he was careful in trying to cross, then the upset was the

result of an accident, and you would pass on to consider the rest of his conduct—whether in what took place immediately afterwards he was also properly careful of his own safety. He is chargeable with knowledge of what was immediately about him, he was bound to take notice of the surroundings—reasonably I mean, to see within reasonable limits. Considering all the circumstances there, what he was doing with his horses and where he was taking them, and what was incumbent upon him to do in trying to get them off the track and to proceed upon his journey, he was bound to take reasonable care of his own safety; and if he did not, if he was careless in not looking and seeing this sloping bank upon which he fell, then I say to you he can raise no claim in the present case. If his own carelessness in failing to look out for his own safety was the occasion of the injury to his hip, then of course he has no claim upon the company or upon the city in the present case.

Those are the first two questions for you to consider. First, whether this was a dangerous place, and next, if it was a dangerous place, whether the plaintiff was negligent himself, contributing thereby to his injury. If you find either of these questions against the plaintiff, if you find, that is to say, that it was not a dangerous place, or if you find that he was negligent, then you have no further duty in the case except to return a verdict in favor of the defendants.

But if you find that the place was not ordinarily dangerous, and that it was ordinarily safe, that there was no unreasonable obstruction to the ordinary travel at that point, and if you find that he was ordinarily careful, under all the circumstances, in looking out for his own safety; then you come to the next question in the case, which is, whether the city or the company is liable in this case, or whether both are liable; because one may be liable and the other may not, or they both may be liable, as the jury may find under the instructions I am about to give.

Consider the case of the company first. The company is not bound by ordinance or statute, so far as appears—I know of no statute and no ordinance has been offered in evidence—to take the snow off the streets and to put it somewhere else; that, I have already said to you. I do not know that any more perplexing municipal problem exists in the winter, in a city of this

size, and in other cities of nearly the same size, than this of a heavy fall of snow and how to remove it. Nevertheless here it is and something must be done. Now as long as the city or the municipality makes no effort to compel its removal from the streets, it must, as I have already said, be dealt with according to the ordinary rules which govern the conduct of one man in his relations to others; due regard must be had to the rights of other persons. So this snow must be put upon the street— since it is to stay there—with due regard to the rights of the people who are to use the street with teams. That is, to repeat what I said at first, with due regard to ordinary travel, conducted in the ordinary manner with teams upon the roadway, considering the fact that there is an amount of snow there to be dealt with and to be considered in deciding the case. Obviously the standard would vary according to the amount of snow that might be there. A heavy fall of snow would naturally leave more upon the street to be dealt with than a light fall of snow. A light fall might interpose no obstacle, no matter how much it was piled up if it was quite light; whereas a heavy fall of snow might require a good deal of care and attention in order to pay that proper regard to the rights of others to which I have alluded.

The company therefore having the right to remove it from its tracks and to leave it upon the street, would only be liable for negligence if it left it there as an unreasonable obstruction to this kind of travel. If it were only a reasonable obstruction, then they would not be liable. I say a reasonable obstruction, because all snow upon the street, I take it, is an obstruction in some degree, therefore I have used the word unreasonable obstruction. It is impossible to avoid putting it upon the street in such a way that it is not an obstruction at all; therefore the company would only be responsible if, in their dealing with it, they so put it that it was an unreasonable obstruction to travel— and I am speaking now of travel by teams. If they care for it properly, with proper regard to the rights of persons using teams, then they would not be responsible for any accident that might happen, such, for example, as the one before us. If they were not at fault, then so far as this case is concerned, this injury would be an accident, and they would not be responsible. If, however, they so disposed of it as to be an unreasonable

obstruction to travel by the use of teams, if it were piled up in such a way, or at such an angle, put in such places and in such quantities as to be an unreasonable obstruction, then they might be responsible. They might be responsible in the present case, depending upon another question, however, which will also have to be determined, and of which I will speak in a few moments. Their duty, therefore, as I say, is to be ordinarily careful in disposing of the snow there upon their tracks so as not to occasion any unreasonable obstruction to travel by teams upon the roadway. If they fulfil that duty, then they are not responsible to what may happen to persons who use the teams. The street cannot help but be obstructed by snow, and if all persons put snow upon the street in a manner that is ordinarily proper and careful, then whatever injury may happen is an accident which must lie where it falls ; it cannot be shifted from the shoulders of the man who is injured, or whose property may be injured, to the shoulders of anybody else. That is the company's duty.

[Now consider the duty of the city. Of course if the company left this snow in a proper condition, then there is no further question in the case, because the city then would have no duty whatever, and therefore your verdict would have to be in favor of both defendants, if you find that question in favor of the company. But if the traction company left an unreasonable obstruction there to travel by teams upon the roadway, then comes the question of the liability of the city. The liability of the city over its roadways is to keep them in proper condition for ordinary travel, conducted in the ordinary manner, considering all the circumstances of the particular case. And I use that phrase because I want to keep in your mind the fact that there was snow upon this street, and that must always be kept in mind.] [2]

A city's duty concerning a street covered with snow is, of course, very different from its duty towards a street not covered with snow. (I am dealing now with streets that are covered with snow.) That being its duty, it is bound to see that the street is not unreasonably obstructed. If there is an unreasonable obstruction it is the city's duty to remove it, and if it fails in that duty then it may be liable, it would be liable to any person who was injured thereby, even although some one else, the person, to wit, who put the obstruction there, might also be

liable. That would not relieve the city. If a man throws a wheelbarrow, for example, in the street, and it lies there for a week or two, and the city allows it to stay as an obstruction upon the street, the city would be liable to a man who drove into it, without any negligence upon his part, and was injured thereby, even though the man who put the wheelbarrow there would also be liable. So if the traction company put an unreasonable obstruction of snow upon this street, it may be liable for the injury done thereby, but the city would also be liable for its failure to remove it, if it had notice of the existence of this obstruction and failed to remove it in the exercise of reasonable diligence upon its part. Of course if some one goes to the proper authorities of a city and notifies them that there is a given obstruction upon the street, then the city has actual notice, it is actually notified, it has actual knowledge, and therefore its duty to remove begins at that point, and from that point on it may exercise reasonable diligence, and must remove the obstruction within a reasonable time.

But it may not have actual knowledge, and then you come to consider whether it ought to have had it in the exercise of proper and reasonable care. I need not say that it is the duty of city authorities to inspect its streets in a reasonable and proper manner, so as to keep itself fairly informed of the condition of the streets, in order that it may discharge the duty which it owed to the traveling public, and that is its duty in regard to snow as well as in regard to anything else which may be an obstruction. It is bound to see that its streets are not obstructed by snow. Obstructed to some degree by snow it cannot prevent, but it is its duty to see that streets are not unreasonably obstructed by the presence of snow.

So if there was an unreasonable obstruction here, you will consider whether the city, as it did not have actual knowledge in this case—there is no evidence of it—whether it did have constructive knowledge, and therefore might be liable for a failure of diligence in removing it. In determining that question, you will have to consider all the circumstances of the case. One of the principal elements is the interval of time that elapsed between the fall of snow and the time when this accident happened. A short time between the placing of an obstruction upon the street and the happening of an accident would proba-

bly not afford a city sufficient time to find out that there was
an obstruction there and remove it; a long time would. And
between these extremes you sometimes have difficult questions
to decide, whether in the exercise of ordinary care a city ought
to have known, and is chargeable with knowledge, because of
a failure of duty in not taking the necessary steps to know.
Determine, therefore, in the present case, if you reach that point,
whether the city had reasonable time within which, by the
exercise of proper care upon its part, it could have discovered
the presence of this obstruction there, if it was an unreasonable
obstruction, and then determine whether, in the exercise of
reasonable diligence, it ought to have removed the obstruction
whatever it was.

If it did have proper time to know, and if it failed in the
exercise of reasonable diligence to remove the obstruction, then
it would be guilty of negligence, and might be responsible for
the consequences, as well as the company. Now those are up
to this point the questions in the case.

There still remains another question for your consideration,
and it is by no means the least important; it is the question, to
use the legal phrase which I will explain more clearly in a
moment, of proximate cause. The word simply means the near-
est cause. And the point now to be submitted to the jury is,
assuming for the moment that there was an unreasonable obstruc-
tion there in the street, whether that was the proximate or
nearest cause of the plaintiff's injury. If it was not, then
neither the city nor the company can be held responsible for the
injury which he suffered. It is sometimes difficult to determine
what is the proximate cause of a given event. Sometimes two
or three causes seem to combine to produce it, and as I say it
is sometimes quite a difficult matter to determine. Usually it
is a question of fact for the jury to decide whether there is such
a connection between two events that one may fairly be said to
have been the proximate cause of the other. And I intend to
submit to the jury the question in this case, whether the injury
which the plaintiff suffered was caused within this sense—was
approximately caused by the condition of the street. At this
stage of the case, of course, we assume that there was an un-
reasonable obstruction. Now you must decide from all the evi-
dence in the case whether that was the proximate cause of the

injury which the plaintiff suffered. The first step between the condition of the street and his injury was the upset of his vehicle, but that did not cause his injury. He was not hurt by the upset of his sleigh, and so far as appears his sleigh was not hurt, there is no claim, at all events, for damage to it. Nothing happened except that the load of hay was overturned. What took place afterwards I need not detail, it was in the course of that transaction that the injury came to him, that he slipped and fell. So that you see it is not one step, it is at least two, and it may be more, between the condition of the street and the fall by which the plaintiff was injured.

Now the rule with regard to liability, under such circumstances, is this : The person who is responsible for the condition of the street, and who may be liable if the obstruction there was unreasonable, is nevertheless only responsible for such consequences as he might fairly foresee as likely to occur from the condition of the street. A man is not bound to look into the future and anticipate everything, near and remote, that may happen from his conduct, but he is bound to foresee the fair and reasonable consequences of what he does. He is bound to have that much sense and foresight at all events, and if he does not exercise it, nevertheless he would be held responsible just as if he had had and had exercised it ; he is held to the reasonable and natural and probable consequences of his own act. So that if a man puts an obstruction in the street, for example, he is bound to see that somebody may come along there and fall over it. That you see is not this case. There was a fall over this obstruction, but that did not do the damage, it was what took place afterwards that did the injury of which the plaintiff complains.

You must consider whether either the company or the city, in what they did or failed to do, are properly chargeable with foreseeing and with the duty to foresee that such an injury as happened in this case to the plaintiff might naturally and probably flow from what they did or did not do. And if you find that such is the case, that this falls within the consequences— such consequences as they might fairly foresee as being the probable and natural consequences of what they or either of them did or did not do—then the jury may find that the injury which the plaintiff suffered was caused proximately by the con-

dition of the street. If they do not so find, however, if they find that this was not a natural and probable cause, looking at the matter as reasonable men, then neither the city nor the company would be responsible. They are responsible, as we are, as individuals are, for the natural and reasonable consequences of their own acts, and only for that. They are not held to any stricter measure or stricter liability than are individuals.

Those are the questions in the case. You will observe that it is necessary to determine them all in favor of the plaintiff before there can be any recovery in the present case. If you find any one of them against him, then you must find your verdict in favor of the defendants. If you find that this place was a dangerous place, if you find that he was not guilty of any contributory negligence on his own part, if you find that the city or the company, or both together, were guilty of negli-- gence, and that their negligence caused his injury, and further if you find that their negligence was the proximate cause of his injury, then and only then can you find a verdict in his favor. If any one of these steps, if in taking any one of these steps, you find the fact against the plaintiff, then your verdict must be in favor of the defendants.

[You may find your verdict against one or the other of the defendants, or against both, as the evidence may seem to indicate. If, for example, you think that the traction company was liable because it had unreasonably obstructed the street, but that the city had not had sufficient time in which to find it out and remove it, then of course the city would not be liable, while the company might be.] [3] So that I say your verdict, in case you find in favor of the plaintiff, may be against both or either of the defendants. The city would be equally liable with the company if it had had time, fair time, and should have removed the obstruction, in case you find it to have been an unlawful and unreasonable obstruction.

Assuming then for the moment that all these questions are found in favor of the plaintiff, you come then to the question of his damages, and about that I need only say a very few words. He would be entitled to recover such amount of money as he paid to his physician, about which there is a discrepancy; he says he paid him $65.00, and the doctor says $75.00. He

would also be entitled to a fair and reasonable allowance for the loss of time he has suffered.   For a while he did very little, for some months afterwards he was able to do something; so that for several months his loss of time was total, and after that it was partial, up to such time as the testimony may indicate. Whatever is fair and reasonable under the evidence he is entitled to in that respect.   He is entitled to an allowance, a fair and reasonable allowance, for such pain and suffering as he underwent by reason of this accident.   I do not think that there is any evidence that he is now suffering any, except perhaps at times and in a very slight degree, and the doctor does not anticipate that he will suffer in the future except to a slight and occasional degree.   Whatever the testimony indicates upon that point the jury will consider, and for that he would be entitled to an allowance.   If he has been permanently injured, not totally, that is not alleged, but if he has been permanently injured in part, he would be entitled to a fair allowance also upon that account.   If a man's earning power has been diminished by reason of the accident for which another is responsible, he is entitled, as part of the verdict, to an allowance for such loss of earning power.   And in determining that matter you must consider his age, his expectation of life as indicated in part by these tables—they are not conclusive, they are only evidence for the jury to consider—consider also his condition of health, and the extent of the loss of power as far as the testimony may indicate.   Take all these matters together— they are the elements of his damage—consider them as fair and reasonable men, and make such allowance as you see proper under all the circumstances of the case.   There is some difficulty, of course, in all these matters, in a case like this, in estimating what a plaintiff is entitled to; nevertheless you have to take the situation as you find it, and do the best you can.

So you will take up the case, therefore, in the questions I have indicated to you, because that is the natural and proper way to consider them, and in order that you may have them before your mind with certainty, I will just state them in that way.

The first question is, whether this was a dangerous place. If it was not a dangerous place, then the plaintiff has no case, and your verdict must be for the defendants.

194          STANTON *v.* TRACTION CO.

Charge of Court—Opinion of Court below. [11 Pa. Superior Ct.

The next question is, was he himself guilty of negligence contributing to the injury there, in taking a road which he knew to be unsafe, having another safer road; or in what he did afterwards in the course and up to the time when he was hurt? If you find that he was negligent in either of these particulars, then your verdict must be in favor of the defendants.

If you find also that the company was not negligent, and that the city was not negligent, then your verdict must be in favor of the defendants. And when I say negligent, I mean in leaving an unlawful and unreasonable obstruction upon the highway; that, in this point, is all I mean by negligent.

Passing that, you come to the last question—supposing it to have been an unreasonable obstruction, whether that was the proximate cause of the plaintiff's injury.

There are those four questions in that order for you to consider, and unless you find them all in favor of the plaintiff, he has no case.

If you find in his favor and against both defendants, your verdict will be against both in such amount as you may find under the instructions concerning damages. If you find in favor of one defendant and against the other, then your verdict would only be against the one defendant.

We reserve the question, whether there is any evidence to go to the jury in support of the plaintiff's claim against either or both defendants.

The jury found a verdict in favor of plaintiff against the Scranton Traction Company in the sum of $887.99 and in favor of the city of Scranton, subject to the point reserved.

The court reserved the question whether there was any evidence to go to the jury in support of plaintiff's claim against either or both the defendants. The defendant moved for judgment non obstante veredicto whereupon the trial judge entered judgment on the verdict in favor of plaintiff against the Scranton Traction Company, McPHERSON, J., filing the following opinion:

At the trial the question was reserved, " Whether there is any evidence to go to the jury in support of the plaintiff's claim." Under this form of reservation we are at liberty to consider whether the plaintiff's case discloses contributory negligence,

and also whether the evidence of the defendant's negligence is of a quality and quantity to require submission to the jury: Fisher v. Scharadin, 186 Pa. 565; Boyle v. Mahanoy City, 187 Pa. 1.

The plaintiff is declared to have been negligent, because he drove upon the dangerous road of which he now complains, although he had known of its condition for several days.    There is no doubt that he knew of the danger that led to his injury and if a safer road had been available his negligence would be established.    But the uncontradicted evidence showed that all the roads by which he could pass from his home to the city of Scranton were in a similar condition, and the court was therefore bound to submit to the jury the question whether he used due care in the necessary passage of a dangerous place.    The question was submitted, the jury have found in the plaintiff's favor, and we see no reason to differ from their conclusion: Altoona v. Lotz, 114 Pa. 238; Shaw v. Phila., 159 Pa. 487.

The defendant's negligence consisted in so disposing of the snow that had fallen upon its tracks as to leave a dangerous condition upon both sides of its rails.    The jury was instructed that if this was dangerous to ordinary travel conducted in the ordinary manner, the defendant had failed in its duty, and upon further consideration we still regard this instruction as correct. We do not think a court can say as matter of law, that a sloping bank, such as was left by the defendant's sweeper, of the height and angle of slope described by the witnesses, is plainly safe for ordinary travel under the circumstances disclosed by the evidence.    The question seems to be for a jury.

It remains to consider, whether the plaintiff's injury was proximately caused by the condition of the street.    Upon this point also we have reviewed and considered fully the instructions given to the jury, and continue to regard them as sound. If the defendant's duty was to dispose of the snow in such manner as to leave the street safe for ordinary travel, it was bound to foresee that an unsafe condition of the roadway might cause a vehicle to be upset, and it could hardly avoid perceiving also that if the vehicle is upset, the driver must move about on foot in order to right his conveyance and repair whatever damage may have been done.    It is equally plain that after he had thus been forced to walk upon the snow by the defendant's fault, he

might slip upon the same slope that overturned his vehicle. It seems to us, therefore, that the connection between his fall and the defendant's act in leaving an unsafe slope of snow upon either side of its tracks was not so remote as to require the court to declare as matter of law, that the defendant could not fairly foresee the probability of such a fall as a natural result of leaving the highway in such a condition. No question arises concerning the operation of an intervening cause.

If, however, we are in error with regard to any of these questions, the record is in such a condition that the case need not be tried again ; judgment can be entered for the defendant upon the reserved point. · The motion for judgment n. o. v. is refused, and the prothonotary is directed to enter judgment upon the verdict.

Defendant, the Scranton Traction Company, appealed.

*Errors assigned* were (1) in refusing defendant's motion for judgment non obstante veredicto. (2, 3) To portions of the judge's charge, reciting same.

*Edward N. Willard*, with him *Everett Warren* and *Henry A. Knapp*, for appellant.—When there is snow and ice upon the ground it is the duty of pedestrians to exercise increased care and caution in going about.

It is contributory negligence, on the part of the traveler, to go upon pavements or parts of the highway that he knows to be dangerous by reason of the presence of ice or snow: Beach on Con. Neg. (2d ed.) sec. 275.

If there is any negligence whatever, in this case, attributable to the appellant, such negligence was not the proximate cause of the plaintiff's injury. If we should go so far as to concede, for the sake of argument, that such negligence was the cause of his sleigh overturning, then it may be still further said that there is no such legal connection between the overturning of the sleigh and the plaintiff's injury by falling down in the middle of the street, as to make the appellant liable. This is borne out by all the cases in Pennsylvania upon the subject of proximate and remote cause: Penna. Railroad v. Kerr, 62 Pa. 313.

A proximate cause is one which in actual consequence, undisturbed by any independent cause, produces the result complained of: Behling v. Pipe Lines, 160 Pa. 359.

When, in the opinion of the court, the uncontradicted evidence does not warrant a jury in inferring negligence as the proximate cause of an injury, the court should direct a verdict for the defendant: Goshorn v. Smith, 92 Pa. 435.

On Tuesday the plaintiff came to Scranton with a load of hay; he drove down Capouse avenue, crossed the street and tipped over his load of hay because, as is shown in the first part of this argument, of the bank of snow which had been raised, near the curbstone, by the property owners in shoveling the snow off their sidewalks. On Saturday of the same week, with the same conditions existing, about the same amount of snow on the street, plaintiff again came to Scranton with another load of hay. There was no actual necessity for his crossing the street. By waiting a few minutes until a vehicle should have gotten out of the way, he could have continued on his way on the same side of the street. But, taking the risk of making a successful crossing, he crossed the street in exactly the same place where he tipped over a few days before and, for the same reason, to wit: the pile of snow at the curb, raised by the property owners, he met with the same experience and his load of hay was again tipped over.

*I. H. Burns*, with him *C. R. Pitcher*, for appellee.—So far as our research has extended, the precise questions raised in this case do not appear to have been decided by our higher courts. The nearest to it is the case of Carr v. Easton, 142 Pa. 139. It is true, in that case the defendant was the city alone, but the dangerous condition of the street was caused by the action of the street railway company, and if the city was liable for allowing the dangerous condition to remain then surely the railway company must have been liable for causing it. The lower court directed a verdict for defendant which was reversed by the Supreme Court on the ground that the questions at issue should have been submitted to the jury.

In Massachusetts, however, an almost exactly similar case to this sustains the action of the court below: Mahoney v. Metropolitan Railway Co., 104 Mass. 73.

The case of Dixon v. Railway Co., 100 N. Y. 170, is also very much like the case at bar.

In the case at bar the plaintiff had reasonable cause to be-

lieve that he could pass the obstruction in safety, and used reasonable care in the attempt; he is entitled to recover: Horton v. Ipswich, 66 Mass. 488.

OPINION BY RICE, P. J., July 28, 1899:

The appellant's counsel insist, that, but for the bank of snow thrown up along the sidewalk by the property owners, the plaintiff could have crossed the defendant's track without upsetting; that is, that he could have crossed it at right angles to the track, and if he had crossed at right angles his load would not have upset.   Grant this, yet it is equally true, that, but for the depression in the traveled way caused by removing the snow from the defendant's track and placing it on the highway at the sides of the track, he could have crossed diagonally from one side of the street to the other in safety, notwithstanding the embankment along the sidewalk.   If either one of these conditions had been absent, it is altogether probable that his load would not have been upset; but how does that affect the liability of the company for what occurred afterwards?   The verdict of the jury has established the fact that the plaintiff was not negligent in being on the street or in crossing at the place he did or in the manner of crossing.   We need not stop to argue, that under the circumstances developed on the trial these questions were for their determination.   They were submitted with instructions to which no exception has been taken.   We have a right, then, to assume, that when the plaintiff's load was upset he was, without fault on his part, placed in a situation where he was warranted in doing what he did to right his load.   It was after he had done that, and whilst holding the reins in one hand and the whiffletree in the other, he was about driving across the track to hitch his team to the load that (without negligence on his part as the jury have found) he slipped on the sloping bank of hard snow or ice, a foot high, at the side of the track, caused by the defendant's act, and was injured.   He was not injured by the capsizing of his load.   It seems needless therefore to speculate as to the proportionate part which the bank of snow along the sidewalk contributed as a cause of that accident.   It is very evident that it was not the sole efficient cause of his capsizing and of his being placed in the situation he was then in; and more to the point, it is evident that, as related to the

sloping embankment of hard snow or ice caused exclusively by the defendant's act, it was not the proximate, but, at the very most, one of the remote causes of the injury he subsequently sustained.   It is with the proximate cause of that that we are now concerned.

Was the defendant negligent, and was the plaintiff's injury the natural and probable consequence of its negligence—such a consequence as under the circumstances of the case ought to have been foreseen by it as likely to flow from its act?   This is the test of the defendant's liability, assuming as the jury have found under proper instructions that the plaintiff was not negligent.

What ought to be done with the snow which falls upon the tracks of a street railway company, and which, if allowed to remain there would obstruct the operation of the road, is a difficult practical problem for the company and municipality to solve, and a difficult question for a court or jury to determine. We think, however, that the general principles as to the rights and duties of the company clearly enunciated in the charge delivered to the jury in the present case are just and reasonable. A street railway company must, of course, have the right to remove snow from its tracks.   In the very nature of things this will cause a depression in the traveled way which in heavy snow falls may be considerable.   Whatever the company may do with the snow thus removed, embankments will be created alongside the track, which, after thawing and again freezing, may become hard and slippery and to some extent an obstruction to travel. If the snow be taken away altogether, certainly no more can be expected of the company in the absence of any statute or ordinance on the subject.   In such a case the obstruction consequent on its removal must be regarded as one of the unavoidable inconveniences, and, perhaps, dangers of travel in vehicles and on foot on a highway occupied by the tracks of a street railway company, for which it cannot be held responsible.   But if the snow be cast on the highway alongside the track and be allowed to remain there, thus increasing the height of the embankments on either side, a question of liability is presented, which may receive different, but not necessarily inconsistent, answers in different cases.   It certainly cannot be laid down as an unvarying rule applicable to every community and to every street or road, that the company may not cast the snow on the highway

at the sides of the track.    This would be unreasonable.    Nor on the other hand can it be said, that it may do so without regard, in the manner of disposing of it, to the effect which that accumulation will have on public travel.    Any disposition that it makes of the snow must be made with due regard to the rights of travel upon the highway, and so as not to interfere needlessly, in a practical sense, with the safety and convenience of persons lawfully using the street in an ordinary way.    See Bowen v. Detroit City Ry. Co., 54 Mich. 496, Wallace v. Detroit City Ry. Co., 58 Mich. 231, Dixon v. Brooklyn Railway Co., 100 N. Y. 170, and Mahoney v. Met. Railway Co., 104 Mass. 73.    This is but an adaptation of the general principle sic utere tuo ut alienum non lædas, and simply imposes the duty to exercise care according to the circumstances.    The width of the street, the amount of travel upon it, the grade, the climate, the depth of the snow fall, the depth of the snow already upon the ground, the kinds of vehicles in common use, and many other circumstances of minor importance are all to be considered in determining what is due care in the disposition of the snow which the company removes from its tracks.    It is not possible to lay down a single rule applicable alike to a crowded thoroughfare of a populous city and to a little traveled road where ample room is left on either side of the track for vehicles to pass and turn and all the different roads of varying conditions lying between those two extremes.    A case, indeed, may be so plain, that it will be the duty of the court, taking a practical view justified by common knowledge and experience, to give the jury binding instructions, that the company has exercised all the care in the removal and disposition of the snow that could reasonably be expected. Doubtless with longer experience definite and fixed rules of law upon some branches or subdivisions of this subject will be evolved out of litigated cases, as has been done in other branches of the law of negligence.    But in the present state of the law as adjudicated by the courts, we think the question, as it arises here, falls within the general principle, that what constitutes negligence where the standard shifts, not according to any common rule, depends upon the facts and circumstances developed at the trial and cannot be determined by the court, but must be submitted to the jury: D., L. & W. R. R. Co. v. Jones, 128 Pa. 308; Menner v. D. & H. Co., 7 Pa. Superior Ct. 135.

Without rehearsing the facts and attempting to show that the company did or did not exercise the care required by the circumstances we conclude, that the question whether or not the defendant needlessly—that is, by the omission to exercise reasonable prudence in view of the circumstances—interfered with the safety of persons lawfully using the street in an ordinary way was for the jury, and was submitted under properly guarded instructions.

Upon the general question raised on the argument as to the negligence of the plaintiff in attempting to pass the obstruction, we cannot do better than to quote from Mahoney v. Railway Co., 104 Mass. 73, a case similar to this in many particulars: "The fact that the plaintiff saw the obstruction created by the defendants, and knew its dangerous character, is not conclusive proof that he was negligent in attempting to pass it. A person who, in the lawful use of a highway, meets with an obstacle, may yet proceed if it is consistent with reasonable care so to do; and this is generally a question for the jury, depending upon the nature of the obstruction and all the circumstances surrounding the party. In the case at bar, if the plaintiff had reasonable cause to believe that he could pass the obstruction in safety, and used reasonable care in the attempt, he is entitled to recover. Horton v. Ipswich, 66 Mass. 488. It is a question for the jury to determine whether, under the circumstances, the plaintiff was justified in attempting to cross the street notwithstanding the obstruction, and whether in doing so he used due care."

Moreover, it is to be noticed, that the plaintiff was not in the position of an ordinary pedestrian, and could not give his undivided attention to the place where he was stepping; also that a choice of routes was not then presented to him. He was bound to do what he did, not only to get himself out of the difficulty, but also to get his load off the track where it was obstructing the passage of the street cars. The question is, whether he used due care under the circumstances. This also was for the jury and was submitted under instructions which have not been specifically assigned for error.

We may therefore take that question as settled by the verdict of the jury.

The plaintiff, then, was in the lawful and nonnegligent use

of the highway when he was injured. The circumstances of his injury were not so extraordinary as to justify the court in declaring as matter of law that the defendant could not fairly be expected to foresee the probability of his receiving such a fall as a natural result of leaving the highway in such a condition. See Yoders v. Amwell Twp., 172 Pa. 447, 454. This was a question for the jury. This point, as well as the other questions in the case, is so thoroughly and satisfactorily considered in the charge to the jury and in the opinion subsequently filed by the learned judge who presided at the trial, that we do not deem it necessary to elaborate further. We find no error in the record, and the judgment is therefore affirmed.