THE PEOPLE v. TRUMAN N. HUBBARD.

*Criminal law—Seduction—Question for jury—Evidence—Credibility
of witness.*

1. It is not the province of the Supreme Court to determine
   questions of fact in criminal cases, where there is any con-
   flict of evidence.

2. Only when the facts are undisputed should the court say that,
   under the law, no crime has been committed.

3. When the general charge covers all the law applicable to the
   case, it is not error to refuse special requests to charge.

4. Where, in a criminal prosecution for seduction, the conviction
   of the respondent depends almost entirely upon the testimony
   of the prosecutrix, who admits that she has sworn falsely in
   certain respects, it is error to refuse to instruct the jury that,
   in determining what credit should be given to her testimony,
   it is their duty to consider her contradictory statements upon
   the stand, and her testimony that she had knowingly sworn
   falsely, and if, after such consideration, they have a reason-
   able doubt of the truth of her testimony in relation to
   respondent's promise of marriage, or her yielding to him in
   consequence thereof, they must acquit the respondent, such
   request not being fully covered by the general charge.

5. In a criminal prosecution for seduction it is competent for the
   prosecution to show:

   *a*—Previous familiarities, protestations of affection, and
   conversations about marriage; citing *People v. Gibbs,* 70 Mich.
   425.

   *b*—The continued friendly and intimate relations of the
   parties for a month after the alleged seduction, during which
   time the prosecutrix remained in the place where she claimed
   to have been seduced, after which she returned to her home.

   *c*—Conversations with the respondent after his arrest for
   bastardy, tending to show the act of sexual intercourse, and
   to some extent, also, the charge of seduction.

   *d*—That the father of the prosecutrix applied to the prose-
   cuting attorney, before the bastardy proceedings were instituted,
   and sought to have the respondent arrested for the alleged
   seduction, for the purpose of rebutting an inference, which
   might be drawn from the circumstances and other evidence in

the case, that the criminal prosecution was an afterthought, and instituted for the purpose of extorting money from the respondent, which claim was made by the respondent's counsel on the trial and in the Supreme Court.

Exceptions before judgment from Jackson. (Peck, J.) Argued May 5 and 6, 1892. Decided June 17, 1892.

Information for seduction. Conviction reversed, and new trial ordered. The facts are stated in the opinion.

*Richard Price*, for respondent.

*A. A. Ellis*, Attorney General, and *J. A. Parkinson*, Prosecuting Attorney, for the people.

GRANT, J. The respondent was convicted of seducing and debauching one Rena Wilbur, an unmarried woman of the age of 17 years. The court was requested to direct a verdict for the respondent, upon the ground that no offense had been proven. The seduction was alleged to have been accomplished under a- promise of marriage. It is now strenuously urged before us that a verdict of acquittal should have been directed, and that the conviction should be reversed, and the prisoner discharged.

It is not the province of this Court to determine questions of fact in criminal cases, where there is any conflict of evidence. The prosecutrix testified that she yielded under promise of marriage. It is true that her testimony is very conflicting, and that she admitted that certain statements made by her in one part of her testimony were false. It is also true that her conduct after the alleged promise, as shown by her testimony, and by letters which she wrote to one Dowling shortly after, is not very consistent with a marriage contract between her and the accused. The judge and the jury, who heard her testimony, were the ones best able to judge whether her testimony was willfully false, and how much credit should

be given to it. Only when the facts are undisputed should the court say that, under the law, no crime has been committed. Her explanation of the false statements she made was for the consideration of the jury.

I think the request was properly refused.

In regard to her testimony the court instructed the jury as follows:

"In determining the value of the testimony of Miss Wilbur, you should consider what her appearance has been upon the stand; her apparent candor and frankness, or otherwise, as it has appeared to you. Consider what the evidence has shown of her relations to and feelings towards the man Dowling. Consider her contradictory statements made upon the stand, if any, and such explanations as she may have made of them. Consider her testimony with reference to her having sworn falsely in some respects upon this trial, and her correction of that statement, and such explanation as she has given of it. In short, gentlemen, consider everything which has appeared in the evidence; the manner of her statement, and the substance of it; her motives of giving it, so far as the evidence has shown any motive attributable to her; her interest in the case, so far as she has had any interest in it; her hesitation in testifying, or promptness, or otherwise, as you may have observed it; and consider her age, her experience, her intelligence, or lack of experience and intelligence, as the evidence may have disclosed. Consider the circumstances under which she has been sworn and given her testimony; the length of her examination, and the manner of it. In short, gentlemen, you bring to the aid of your judgment, in determining the weight to be given to her testimony, all that you have seen and heard in the course of this trial, which aids you in determining how much truth there is in the story she has told; and as you have been convinced of the truth of her statement you should act upon it, but only to the extent that you are convinced; for evidence is that which produces conviction upon the mind of the court or jury; it is not simply what is sworn to by the witnesses."

This very general charge might be sufficient in most cases, but, considering the character of her testimony,

we think the judge should have given the following request:

"In determining what credit should be given to the testimony of the complaining witness, it is your duty to consider her contradictory statements upon the stand, and her testimony that she had knowingly sworn falsely; and if, after such consideration, you have a reasonable doubt of the truth of her testimony in relation to defendant's promise of marriage, or her yielding to him in consequence thereof, you must acquit the defendant."

It must be remembered that conviction depended almost entirely upon her testimony. In such cases, where the prosecutrix admits that she has sworn falsely, it is highly proper that the jury should receive from the court very pointed instructions. The language of this Court in *People v. Jenness*, 5 Mich. 330, is applicable to this case:

"We think it is the duty of a judge to comment upon the nature of such testimony, as the circumstances of the case may require; to point out the various grounds of suspicion which may attach to it; to call their attention to the various temptations under which such witness may be placed, and the motives by which he may be actuated, and any other circumstances which go to discredit or confirm the witness, all of which must vary with the nature and circumstances of each particular case."

The circuit judge summed up the issues for the jury in the following language:

"To maintain the prosecution, it is necessary that the evidence should show beyond a reasonable doubt each and all of the following propositions, which are the essential elements of the charge, viz.: That the respondent, Hubbard, on October 3, 1890, had carnal intercourse with the complaining witness, Rena Wilbur; that Rena Wilbur, being an unmarried woman and chaste, assented to the intercourse; and that her assent thereto was obtained by a promise of marriage, made by Hubbard to her at the time, without which promise she would not have yielded. While all these propositions are essential to the complete

ness. of the charge, the controversy on this trial has been specially directed to the following questions: Whether Rena Wilbur was a chaste girl up to October 3, 1890, the time of the alleged seduction; and whether Hubbard made her a promise of marriage on that day, and obtained her consent to the intercourse at that time by such promise."

The charge of the court, in this as well as other respects, was in entire accord with the previous decisions of this Court in cases of this character, and was entirely fair. *People v. Gibbs*, 70 Mich. 425, and authorities there cited. I therefore think it unnecessary to discuss the specific exceptions to the charge and the refusal to give certain requests. When the general charge covers all the law applicable to the case, it is not error to refuse special requests. It is evident that a general charge, covering all the points in a consecutive and orderly manner, will usually be better understood by a jury, and more useful to them in their deliberations, than the reading of isolated requests. Requests are generally useful to the judge in calling his attention to the questions involved, when such requests are presented, as they should be, in time for his consideration.

Certain errors are alleged upon the admission of evidence which will now be considered.

Evidence of previous familiarities, protestations of affection, and conversations about marriage were competent. *People v. Gibbs*, 70 Mich. 425.

After the alleged seduction the prosecutrix remained in the place about a month, after which she returned to her home. The court excluded conversations about marriage during that time, but permitted evidence that they were together often during that month. I think it was entirely competent to show that their relations continued friendly and intimate during that time. No attempt was made to show any acts of sexual intercourse, as was the

case in *People v. Clark,* 33 Mich. 112. But the relations they openly entertained towards one another were proper for the consideration of the jury.

Four witnesses testified to conversations with the respondent after his arrest upon the charge of bastardy. These conversations were admissible, as tending to show the act of sexual intercourse, and to some extent, also, the charge of seduction. One of these witnesses testified that the respondent said:

" I am guilty of this thing, and I ought to be shot. I ought to have known better. I was keeping company with this other girl, and was engaged to be married to her, and I ought to have known better than to be fooling with this girl [Miss Wilbur], leading her along."

The prosecution was permitted to show by Mr. Wilbur, the father, that he went to the prosecuting attorney, before the bastardy proceedings were instituted, and sought to have a criminal prosecution for seduction instituted in the first instance. This was evidently for the purpose of rebutting an inference, which might be drawn from the circumstances and other evidence in the case, that the criminal prosecution was an afterthought, and instituted for the purpose of extorting money from the respondent. In view of the fact that this claim was made both upon the trial and in this Court, I think the testimony was competent. The respondent's counsel requested an instruction upon this view, claiming that there was evidence that the prosecution was instituted for the purpose of extorting money from the defendant.

For the error above noticed the conviction must be reversed, and a new trial ordered.

Long and Montgomery, JJ., concurred with Grant, J.

Morse, C. J., concurred in the result.

McGrath, J., did not sit.