DARLING *v.* THOMPSON.

1. Waters and Water Courses—Breaking of Dam—Question for Jury.
   The question whether a dam went out because of its defective construction and negligent maintenance, or because of a sudden and unusual rise of water, is for the jury on conflicting evidence, as is also the question whether damages alleged to have been due to the breaking of the dam would have been likewise sustained had the dam not given way.

2. Witnesses—Contradiction.
   A party may contradict, though he cannot impeach, his own witness.

3. Evidence—Conclusion of Witness.
   A question whether a dam would have gone out had it not been for the high state of the water is properly excluded as

| | |
|---|---|
| 108 | 215 |
| 125 | 239 |
| 108⁻ | 215 |
| s65NW | 754 |
| 131 | ²527 |
| j131 | ²531 |
| 108 | 215 |
| d134 | ²242 |

calling for a conclusion of fact within the province of the jury.

4. CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS.

An instruction to the effect that plaintiff's failure to attempt to avert the injury complained of does not render him guilty of contributory negligence, if his efforts in that direction would have necessarily been unavailing, is not open to objection.

5. NEGLIGENCE—OWNERSHIP OF DAM.

In an action for damages resulting from the breaking of a dam, the testimony of one of the defendants that he owned the dam does not conclusively relieve his codefendant from liability, where there are circumstances from which the jury might infer that the latter was likewise an owner.

6. APPEAL—INSTRUCTIONS TO JURY.

Error will not lie upon the refusal of requests to charge the substance of which was covered by the charge as given.

Error to Kalkaska; Aldrich, J. Submitted December 6, 1895. Decided January 16, 1896.

Case by Gilbert Darling against Robert N. Thompson and Harriet H. Stone for damages resulting from the giving way of a dam, alleged to have been caused by defendants' negligence. From a judgment for plaintiff, defendants bring error. Affirmed.

*McIntyre & Wetmore* (*Pratt & Davis*, of counsel), for appellants.

*William D. Totten* and *Cassius M. Phelps*, for appellee.

HOOKER, J. The plaintiff's dam and mill, situate upon the Boardman river, were injured by a flood, which he charges to have been caused by the negligence of the defendants, who owned a dam about half a mile above the plaintiff's dam. A judgment for $1,200 was recovered, and the defendants have appealed.

The most comprehensive question raised by the record is whether the court should have directed a verdict for the

defendants. The theory of the plaintiff is that the defendants' dam was constructed and maintained in a faulty manner and condition. He asserts that upon the upstream side, near the flume, where the break occurred, it was covered with planks, which were never made tight, and that they did not extend to the top of the dam; that the embankment constituting the dam was made of sand, and that the water leaking through the planking was accustomed to wash out this sand, making holes which defendants were obliged to fill from time to time, and that this would be increased by a rise of the water above the ends of the planks. The dam was provided with a flume and waste weir, the latter having flush boards, for the control of the water, and by which the volume of water wasting from the pond could be increased or diminished. The defendants contend that the undisputed evidence shows that the breaking of the dam was caused by a sudden, unusual, and unexpected flood, which came without unusual rainfalls, or warning of any kind; that it ran over their dam, and washed it out, not by reason of any leaks in or defective construction of the dam, but simply because it came so fast that it could not escape fast enough to prevent running over; and furthermore, if the defendants could have let it out as fast as it came, the result would have been the same to the plaintiff, because his facilities for taking care of that quantity would have proved inadequate, as his waste weir and openings were less than defendants'. There was evidence showing the construction of the dam in accordance with the plaintiff's theory; also, that upon the morning in question there were holes in the dam, made soft by water, into which horses sank several feet, shortly before the dam went out. The water was allowed to accumulate in the pond, or at least did accumulate, six or eight inches in depth beyond its usual quantity,—so much, indeed, that defendants' counsel contend that it ran over the dam; and there was testimony showing that the water ran over the dam by the sides of the flume. On the other hand, it is claimed,

and there is testimony tending to show, that it did not get sufficiently high to run over the dam, but that by reason of the leaks, and washing out of the dirt, the dam sank and became lower next the flume, and that water finally did run over, and wash out the dam at that point. The defendants' counsel argue that the testimony shows that no unusual quantity of rain had fallen; that the stream was not swollen above or below their pond; but that suddenly, within half or three-quarters of an hour, the water rose six or eight inches,—a thing unprecedented; and this notwithstanding the fact that the mill was running. On the other hand, it is said, and there is evidence to sustain the claim, that the flush boards were left in the waste weir until the dam had become seriously weakened, and had begun to go to pieces; and the claim is made that the accident arose, not from any inexplicable or miraculous accumulation of water, but by reason of defendants' controlling the flow of the stream (which was not extraordinary) until the dam began to disintegrate, when the removal of flush boards, which, if done in time, would have prevented the accident, was useless. We are of the opinion that these were proper questions for the jury, as was also the question of the plaintiff's ability to protect his dam against the flow of the stream that morning, had the defendants permitted it to escape through their waste weir as it came.

Several questions are raised upon the admission and exclusion of testimony, some of which will be noticed. Others we consider unimportant. The evidence showed that one Perkins owned a dam a short distance up the stream from the defendants' dam. He was allowed to testify as to the condition of the water in the stream during the night and upon the morning in question. This was objected to upon the ground that the object was to impeach plaintiff's other witnesses, and it is urged in the brief that this was the effect. We think counsel have overlooked the distinction between a contradiction and an impeachment. A party cannot impeach his own witness, but he may contradict him; for, if it were otherwise, he

would be at the mercy of his first witness. A moment's reflection will show the far-reaching effect of the rule contended for.

The court refused to permit a witness to testify that the dam would not have gone out but for the high state of the water, and we think he rightly determined that this was a conclusion of fact, and within the province of the jury.

It is contended that the court should not have permitted a verdict against Mrs. Stone, because she was not shown to have been an owner of the dam, or any interest in it. Counsel assert that it was in the highway, and that she had nothing to do with the dam. There was evidence that Mrs. Stone owned the land upon which it was built; that her codefendant was her son-in-law, and had charge of her affairs at Boardman. He stated that he owned the dam, and leased it to the Thompson Bowl Company, of which he was president. We are pointed to no testimony that shows who erected the dam, but we find in the record that at the time of its construction a witness said to Mr. Stone that it was being constructed improperly, and, from an objection made by defendants' counsel, it would seem that this was about the year 1874. Mrs. Stone is shown to own certain lands upon which this dam is said to have been built, by a deed from the administrator of Hamilton Stone. The same witness testifies that Thompson once bid off a job of repairing the dam. It is inferable, therefore, that the defendant Thompson did not build the dam, and that Harriet Stone's grantor did. There is no evidence to show by what right Thompson owned it, as he said he did own it. That was a question for the jury under the evidence, unless his testimony is to be deemed conclusive. Inasmuch as the circumstances by which he acquired title were not shown, and his assertion of the fact was a conclusion that should have been drawn by the jury if by any one, we think the court committed no error in treating it as an open question, and

leaving the jury to determine whether Mrs. Stone was an owner, and properly chargeable with neglect.

Error is assigned upon the following language:

"But if you find that the damage would have resulted anyway; that the damage would necessarily have resulted from the act of defendants; that the defendants are guilty of negligence that caused this injury, even though you may find that the plaintiff did not use such caution as he should have used,—then that would not defeat his action."

There is nothing in this question when the connection in which the language was used appears, viz.:

"In this case, if you should find that the plaintiff knew that there was a flood of water coming upon him, then, in that case, it would be his duty to use such care as an ordinarily cautious, prudent man would use, knowing that there was a flood imminent; and if you find that he did not do so, and by reason of his not doing so he contributed to the damage that was done to him, then he could not recover."

It was, in effect, saying that plaintiff's failure to make futile efforts to prevent injury would not amount to contributory negligence,—a proposition so trite that we marvel that we should be asked to pass upon the question.

Other questions are raised upon requests to charge, but an examination has failed to disclose any important omissions. The charge covers the subject, and, as we have heretofore said, where that appears, the case will not be reversed for a failure to give the charge that counsel may have outlined.

We find no error in the record, and the judgment is affirmed.

LONG, GRANT, and MONTGOMERY, JJ., concurred. McGRATH, C. J., did not sit.