PEOPLE *v*. ELCO.

1. RAPE—AGE OF CONSENT—EVIDENCE.
    On a prosecution for carnally knowing a girl under 16 years old, respondent's admissions that the girl was "under age," as well as the appearance of the girl, are competent to be considered by the jury.

2. SAME—QUESTION FOR JURY.
    On such a prosecution, several witnesses testified to respondent's admissions that the girl was under age. The girl and her mother both testified that she was over 16 at the time of the alleged offense, but it appeared that they had testified to the contrary on the preliminary examination, and, in order to substantiate her claim on the trial, the mother was obliged to change the date of the birth of each of her several children from that given on the examination. *Held*, that the question of the girl's age was for the jury.

3. SAME—SUBSEQUENT RELATIONS.

It was competent for the people to show that, after the commission of the alleged offense, and while the girl was with child, the relations between her and respondent were intimate and friendly.

ON REHEARING.

1. CRIMINAL LAW—WITNESSES—IMPEACHMENT.

The prosecution in a criminal case may show contradictory statements of a hostile witness, whom the law compels it to call, for the purpose of affecting his credibility. CARPENTER and MOORE, JJ., dissenting.

2. TRIAL—OBJECTIONS TO TESTIMONY—APPEAL.

Where, on objection made to certain testimony, the court holds it admissible for a particular purpose not within the scope of the objection, an exception to such ruling will, *it seems*, raise the question of the admissibility of the testimony for the purpose stated by the court.

Error to Hillsdale; Chester, J. Submitted June 5, 1902 (docket No. 100); opinions filed October 7, 1902. Rehearing granted November 19, 1902; reargued December 2, 1902; former decision reversed May 29, 1903.

Al Elco was convicted of statutory rape. Affirmed.

*Frank M. Hall* and *Fred O'Melay*, for appellant.

*William H. Frankhauser*, Prosecuting Attorney, for the people.

GRANT, J. Respondent was convicted of sexual intercourse with one Pearl Arnold, a female under the age of 16 years.

1. The principal ground of error relied upon for reversal is that there was no competent proof to establish the girl's age. The respondent is the girl's uncle, and was 30 years old. The complaint was not made either by the girl or her mother, but by a neighbor. She had been delivered of a child. The girl and her mother were both witnesses hostile to the prosecution, and desired to shield

the respondent.	Both the girl and her mother, upon the examination, testified that the girl was under 16 years of age at the time of the alleged intercourse.	Upon the trial both testified that they were mistaken, and that she was a year older, which made her more than 16 years of age. The girl also denied ever having sexual intercourse with the respondent.	Several witnesses testified that the respondent told them that he had "gotten the girl into trouble; that her mother threatened prosecution; and that the girl was under age."	He did not deny these statements, taking advantage of his constitutional right not to testify.	The jury were entitled to consider the statements of the respondent as to her age, and as well her appearance.	*Com.* v. *Emmons*, 98 Mass. 6; *Com.* v. *Phillips*, 162 Mass. 504 (39 N. E. 109); *People* v. *New York County Justices*, 10 Hun, 224.	What the respondent meant by using the expression, "The girl was under age," was for the jury.

It is impossible to read this record without reaching the conclusion that the girl was infatuated with the respondent, and that she testified falsely for the sole purpose of shielding him.	No other conclusion can with reason be reached than that he had sexual intercourse with her during the time alleged in the information.	The mother had had several children, and was compelled to change the dates of the births of all of them, from that to which she testified upon the examination, in order to make the age of Pearl above 16.	We think there was conflicting evidence in regard to her age, which made it a proper question for the jury.

2. Evidence was permitted tending to show that Pearl and respondent left Michigan and went to Indiana, where her child was born, and to show intimate relations subsequent to the time of the commission of the crime.	This testimony was offered, not to establish other and subsequent offenses, but to show his treatment of the girl after the commission of the alleged offense, and after he ascertained that she was with child.	This testimony is not

within the rule established in *People* v. *Clark*, 33 Mich. 112; *People* v. *Etter*, 81 Mich. 570 (45 N. W. 1109); and *People* v. *Fowler*, 104 Mich. 449 (62 N. W. 572). In these cases the prosecution was permitted to show subsequent acts of sexual intercourse to prove the one charged. This was held improper. This case comes within the rule established in *People* v. *Hubbard*, 92 Mich. 326 (52 N. W. 729), *People* v. *Craig*, 116 Mich. 388 (74 N. W. 528), and *Matthews* v. *Detroit Journal Co.*, 123 Mich. 608 (82 N. W. 243), and authorities cited, in which it was held competent to show the subsequent and intimate friendly relations of the parties. The court very carefully instructed the jury upon this point, in accordance with the rule of these decisions.

3. Testimony was introduced showing admissions by Pearl that she and the respondent lived together in Indiana. The objection made to this testimony was that it was immaterial, and that the admissions were not made in the presence of the respondent. The court stated that he admitted them only as bearing on the credibility of the witness Pearl, she having denied that she there lived with respondent. No objection was made to this testimony upon this ground. If the witness Pearl had been called as a witness by the respondent, this testimony would have been clearly admissible. As already stated, it was apparent that she was in fact his witness, and testified for the purpose of protecting him. Whether, under such circumstances, it was competent for the people to show contradictory statements made by her, we need not consider, inasmuch as this point was not raised in the court below. I do not think upon this record that the case should be reversed for the admission of this testimony.

Conviction should be affirmed.

Moore, J. I cannot agree with Mr. Justice Grant that testimony of admissions made by Pearl Arnold not in the presence of the accused was admissible. The case is

directly within *People* v. *Fowler*, 104 Mich. 449 (62 N. W. 572), and the cases there cited.

The conviction should be set aside, and a new trial ordered.

HOOKER, C. J., and MONTGOMERY, J., concurred with MOORE, J.

### ON REHEARING.

GRANT, J. A rehearing was granted in this case upon the point upon which it was reversed. Counsel for the people urge that Pearl Arnold was a hostile witness,— one whom they were compelled by the law to call; that they are not bound by her testimony, and may impeach her by showing that she made contradictory statements. This question was not discussed in either opinion rendered at the former hearing. The question is one of importance, and upon it the authorities neither in England nor America are in harmony. Many decisions in both countries hold that a party cannot thus impeach his own witness, while many others hold to the contrary. Neither text-writers nor courts appear to agree which holding is supported by the weight of authority. Greenleaf states that the weight of authority is in favor of admitting the evidence. 1 Greenl. Ev. (16th Ed.) § 444. This statement of the learned author is questioned by the decisions of some of the courts. This court has held that it is competent to permit the prosecuting attorney to read to an unwilling witness, whom he is compelled to call, his deposition taken before the examining magistrate, and interrogate him in relation to the statements made therein. *People* v. *Case*, 105 Mich. 92 (62 N. W. 1017). The right of thus impeaching a witness was somewhat discussed in that case, and some authorities cited. It cannot, perhaps, be regarded as explicitly determining the question, inasmuch as it was said that impeachment was not there attempted, but that the use made of the deposition was to overcome the witness' disinclination to divulge. This ruling was followed in

*People* v. *Gillespie*, 111 Mich. 241 (69 N. W. 490), where an affidavit made by an unwilling witness, called by the prosecution, which was surprised at her testimony, was permitted to be read to her for the purpose of inducing the witness to state what she knew of the facts. These cases cannot, perhaps, be regarded as deciding the question.

Text-writers and courts which hold to the rule excluding such testimony admit that the party is not bound by the evidence of the witness, but may prove the contrary by other witnesses, and argue to the jury that these have told the truth, rather than the other. Indirectly, at least, this is as complete an impeachment of a witness as any. The same authorities also recognize an exception in the case of witnesses whom a party is compelled to call,—as subscribing witnesses to wills, deeds, etc. *Selover* v. *Bryant*, 21 L. R. A. 418 (54 Minn. 434, 56 N. W. 58), note, and authorities there cited. In that case it is said:

"We feel confident that well-recognized reasons and principles of the law of evidence support the proposition that, at least in the discretion of the trial court, such evidence [contradictory statements] is admissible."

In *State* v. *Sorter*, 52 Kan. 531 (34 Pac. 1036), it is said:

"Where a party has been entrapped or deceived by an artful or hostile witness, he may examine the witness as to contrary declarations, and may, in the discretion of the court, be allowed to show what such contrary declarations were."

The reason for allowing a party to impeach a subscribing witness to a will, etc., is that he is a witness whom the law requires him to call. Why should not the same reason hold good in every case where the law compels the party to produce a witness? It is clearly so held in *State* v. *Slack*, 69 Vt. 486 (38 Atl. 311).

Rapalje, in his recent work on the Law of Witnesses, states four exceptions to the rule:

"(1) Where the party is compelled to call the witness in order to make out his case; (2) where the object is to show

the true facts, not merely to discredit the witness; (3) where the witness is an adverse party; and (4) where he is hostile or unfriendly." . Rap. Wit. §§ 213–216.

It is easy to raise objections to either course.

Best, in his work on Evidence, quotes from Phillipps & Ames on Evidence, as follows:

"It may be further remarked that this is a question in which not only the interests of litigating parties are involved, but also the more important general interests of truth, in criminal as well as in civil proceedings; that the ends of justice are best attained by allowing a free and ample scope for scrutinizing evidence and estimating its real value; and that in the administration of criminal justice, more especially, the exclusion of the proof of contrary statements might be attended with the worse consequences." Best, Ev. § 645.

We also cite the following authorities as sustaining this method of impeaching hostile witnesses: *Rex* v. *Oldroyd*, Russ. & R. C. C. 88; *Dunn* v. *Aslett*, 2 Mo. & R. 122; *U. S.* v. *Hall*, 44 Fed. 864 (10 L. R. A. 324); *Brown* v. *State*, 28 Ga. 199; *Hildreth* v. *Aldrich*, 15 R. I. 163 (1 Atl. 249); *Bank of Northern Liberties* v. *Davis*, 6 Watts & S. 285; *Com.* v. *Marrow*, 3 Brewst. 402; *Cox* v. *Prater*, 67 Ga. 588; *Cross* v. *Cross*, 108 N. Y. 628 (15 N. E. 333); *Hurlburt* v. *Bellows*, 50 N. H. 105; *McNerney* v. *Reading City*, 150 Pa. St. 611 (25 Atl. 57); *Moore* v. *Railroad Co.*, 59 Miss. 243; 29 Am. & Eng. Enc. Law (1st Ed.), 816; *Thornton's Ex'rs* v. *Thornton's Heirs*, 39 Vt. 122. See, also, *Humble* v. *Shoemaker*, 70 Iowa, 223 (30 N. W. 492).

One of the chief reasons given for the exclusion of such evidence is that the party producing the witness vouches for his credibility, and should not, therefore, be allowed to impeach him. Whatever force that reason may have in civil cases, it has no force in criminal ones, under the decisions of this court. In numerous decisions this court has held that the prosecuting attorney is bound to produce before the jury facts which tend to prove, not only guilt, but those which tend to prove innocence. In certain

crimes he must produce all the witnesses who were present and presumed to have knowledge of the crime, and this even though he has good reason to believe them hostile. *Hurd* v. *People*, 25 Mich. 405; *Wellar* v. *People*, 30 Mich. 16; *Meister* v. *People*, 31 Mich. 99. With this duty imposed upon the prosecuting attorney, how can he vouch for the credibility of the witnesses he places upon the stand and is compelled to call? Besides, many of the witnesses in criminal cases do not come from the ranks of those entitled to the presumption of truth-tellers. They are often the accomplices of criminals and participants in crime, who have confessed and promised to testify to escape punishment. In crimes—and they are many—committed in brothels and other like places, resorted to by the low and the vicious, the people cannot choose those witnesses whom they will vouch for as truth-tellers. They must call them all, and assist the jury in sifting the testimony and reaching the truth. Witnesses are not manufactured by the prosecution to order. It must take them as it finds them. One writer tersely says:

"If a lawsuit was a manufacture, and the party bringing it could select his materials,—facts and witnesses,—there might be some propriety in holding him responsible for the character of these materials; but, as both are beyond his control, his responsibility for their character is out of the question. He comes into the court with the best materials he can get to make out his case." 11 Am. Law Rev. 267.

The most reputable and reliable persons are not usually found at places where crimes are committed. The people in this case were required, under our decisions, to call Pearl Arnold as their witness. She and the respondent alone knew the absolute truth as to the charge made against him. She was an extremely hostile witness, evidently determined to do all in her power to acquit him. The evidence in the case clearly establishes the fact that he had sexual intercourse with her, and that he was the father of the child. When such a witness in a criminal

case is so clearly hostile, we think it entirely competent to impeach her by showing contradictory statements, not for the purpose of establishing the substantive fact of guilt, but that the jury may value her testimony at its real worth. To hold otherwise would result in many cases in the denial of justice. There is little danger that a respondent can be prejudiced by this course. The testimony must also relate to material facts, and the witness must first be interrogated as to the language of the statements, and the time when and place where, and the person to whom or in whose hearing, they were made.

*Darling* v. *Thompson*, 108 Mich. 215 (65 N. W. 754), was a civil case. One witness for the plaintiff had testified to a given state of facts. Another witness was called by the plaintiff, who testified to a different state of facts. It was urged that this was an attempt to impeach one's own witness. It was held to be a contradiction, not an impeachment, and that a party could not be at the mercy of his first witness.

*McGee* v. *Baumgartner*, 121 Mich. 287 (80 N. W. 21), was also a civil case. The defendant claimed to have been taken by surprise by the testimony of one of his own witnesses, and submitted an affidavit made by her, contradictory of her statements upon the stand. Defendant was permitted to ask leading questions in regard to the affidavit, which she admitted she had made, but testified that it was obtained from her by threats in the office of the defendant's attorneys. The witness who drew the affidavit was then called, and asked to state the language used by the witness when the affidavit was prepared. This was objected to as an attempt to impeach his own witness. The objection was at first sustained, but the court afterwards permitted the witness to testify as to whether any threats or force were used. We held that the court went far enough in permitting the defendant to attack the credibility of his own witness.

For the purposes of this case it might be admitted that in civil cases a party cannot impeach his own witness by

showing contradictory statements. It is, however, unnecessary to determine that question. The question is, May the prosecution in a criminal case show contradictory statements made by a hostile witness, whom the law compels,the people to call, not for the purpose of proving the offense, but for the purpose of affecting the credibility of the witness? This decision goes no further than to hold that in criminal cases this may be done.

The conviction is affirmed.

HOOKER, C. J., and MONTGOMERY, J., concurred with GRANT, J.

CARPENTER, J. ( *dissenting* ).   The defendant was convicted in the court below of sexual intercourse with one Pearl Arnold, a female under 16 years of age. A full statement of the case is found in the opinion of Mr. Justice GRANT, at page 520, *ante*. A rehearing was granted, and the case was reargued late in the October term.

The important question is that upon which the justices differed on the former hearing, namely, did the people have a right to impeach Pearl Arnold, one of their own witnesses, by proof of prior contradictory statements? As a witness on the part of the people, said Pearl Arnold denied that she had intercourse with defendant, and she also denied that she was with him in Indiana. The people placed upon the witness stand one Rose Fulks, and the following occurred:

" *Q*. Now, what did Pearl say, if anything, about Al and her being together down there in Indiana? (Objected to by defendant as immaterial, and not in the presence of defendant.)

" *The Court:* I think you may take the answer. It is to be received only as bearing on the credibility of Pearl,— not to be taken against the defendant. (Exception by defendant. )

" *Q*. Just tell what she said about she and Al being together in Indiana.

"*A*. She said she was out there in Indiana, and she didn't have to work. She said Al wouldn't let her work

nor do nothing, and I said, 'That makes it nice for you, don't it?' and she said, 'Yes, it does.'"

In answer to defendant's argument against the admissibility of this testimony, it is said, *first*, that the objection of defendant's counsel was not sufficient to permit him to contend that the testimony was not admissible as affecting the credibility of the witness Pearl Arnold; and, *second*, that the testimony was in fact admissible for the purpose of affecting her credibility.

I think the defendant's objection permits him to urge that the testimony was not admissible to affect the credibility of the witness. It is true that this precise objection was not made, and that, when the question was first asked, the objection was that the testimony was immaterial, and the conversation not in the presence of defendant. But when the court said the testimony would be received as bearing upon the credibility of the witness, defendant's counsel, by excepting to that ruling, indicated that, notwithstanding this suggested reason, he objected to the testimony. If he had said, "I object to the testimony because it is not admissible as affecting the credibility of the witness," which certainly would have been sufficient, he would no more clearly have apprised the court and opposing counsel that he insisted on that objection.

Is the testimony admissible to affect the credibility of the witness? I am by no means sure that the fact that Pearl Arnold and defendant lived together in Indiana had any bearing on the issue in this suit. If it had not, this testimony is clearly inadmissible. I shall assume, however, under the authority of *People* v. *Schilling*, 110 Mich. 412 (68 N. W. 233), *People* v. *Keefer*, 103 Mich. 83 (61 N. W. 338), *People* v. *Jamieson*, 124 Mich. 164 (82 N. W. 835), and *Matthews* v. *Detroit Journal Co.*, 123 Mich. 608 (82 N. W. 243), that it had a material bearing on this issue; and, under that assumption, I will consider whether or not it is admissible. Its admissibility for the purpose of affecting the credibility of the witness is

urged on two grounds, not entirely consistent with one another, either of which is sufficient: *First*, it is urged as a rule of practice, applicable generally, that a party calling a hostile witness, or a witness who testifies contrary to what is expected, may attack his credibility by proving prior contradictory statements; *second*, if general practice does not justify this method of impeachment, it is insisted that it was proper in this case, because the law compelled the prosecution to call this witness, and therefore exempts it from the operation of the ordinary rule.

The authorities respecting the first of these grounds, as appears from the majority opinion, are not harmonious. They are collected and discussed in the careful and well-considered opinion of Mr. Justice Williams in *Hurley* v. *State*, 46 Ohio St. 320 (21 N. E. 645, 4 L. R. A. 161). In that case, which was a trial for murder, a witness for the State gave materially different testimony from that given by him at the coroner's inquest. The prosecuting attorney was permitted, against defendant's objection, not only to call the attention of the witness to his former testimony, but was also permitted, in instances where he denied the statements attributed to him, to prove that he made them, by the testimony of the coroner's clerk. The opinion contains a detailed and elaborate examination of the text-books and decisions touching this question. All the cases cited in support of the proposition contended for by Mr. Greenleaf, referred to in the majority opinion, are noticed, and the conclusion is reached that only one of these authorities, namely, *State* v. *Norris*, 2 N. C. 437, 438 (1 Am. Dec. 564), and certain dissenting opinions, sustain the text. On the other hand, numerous authorities are cited which oppose it, and the conclusion is reached in that case, as correctly stated in the headnote, that:

"A party who calls a witness, and is taken by surprise by his unexpected and unfavorable testimony, may interrogate him in respect to declarations and statements previously made by him, which are inconsistent with his testimony, for the purpose of refreshing his recollection, and

inducing him to correct his testimony or explain his apparent inconsistency; and, for such purpose, his previous declarations may be repeated to him, and he may be called upon to say whether they were made by him.    In case the witness denies having made such statements, or his answer is ambiguous concerning them, it is not competent for the party calling him to prove them by other witnesses."

See, also, *Cox* v. *Eayres*, 55 Vt. 24 (45 Am. Rep. 583); *Ellicott* v. *Pearl*, 10 Pet. 412; *Bullard* v. *Pearsall*, 53 N. Y. 230; *Adams* v. *Wheeler*, 97 Mass. 67.

I forbear entering into any further discussion of these authorities, because I think the question is foreclosed by the decisions of this court.    In *Darling* v. *Thompson*, 108 Mich., at page 218 (65 N. W. 755), it is said:    "A party cannot impeach his own witness, but he may contradict him."    In the case of *McGee* v. *Baumgartner*, 121 Mich. 291 (80 N. W. 23), this precise question was involved and determined.    I quote from that case:

"Defendant claimed to have been taken by surprise by the testimony of one of his own witnesses.    He then submitted to her an affidavit, which she had made in writing, contradictory of her statements upon the stand.    Defendant was permitted to put leading questions to her in regard to this affidavit.    She admitted having made the affidavit, but said it was obtained from her by threats in the office of the defendant's attorneys.    The witness who drew the affidavit was then called, and asked to state specifically the language used by the witness when the affidavit was prepared.    Plaintiff's counsel objected for the reason that it was an attempt to impeach the defendant's own witness. The court at first sustained the objection, but finally permitted the witness to testify" that no threats, force, or promises were used to induce the making of the affidavit. And it was decided that "the court went far enough to permit defendant to attack the credibility of his own witness."

It appears from the record in that case that the witness whom it was sought to contradict testified contrary to the statements contained in the affidavit referred to.    The rejected testimony was offered for the express purpose of discrediting the witness, and the argument advanced in its

support was the authority of Greenleaf's Evidence, heretofore referred to.  *McGee* v. *Baumgartner* must, therefore, in my judgment, be regarded as an authority against the general proposition advanced in support of the ruling in question.

Can the ruling of the court be sustained on the ground that Pearl Arnold was a witness whom the people were compelled to call ? They were compelled to call her because, in this State, it is the rule that the prosecution must call "all the witnesses present at the transaction." See *Hurd* v. *People*, 25 Mich., at page 416; *Maher* v. *People*, 10 Mich. 225, 226 (81 Am. Dec. 781). This rule was recognized and enforced because this court determined it to be a part of the common law. The authorities for this determination were the decisions of *Reg.* v. *Chapman*, 8 C. & P. 558, decided in 1838; *Reg.* v. *Holden*, 8 C. & P. 606, also decided in 1838; the unreported case of *Reg.* v. *Orchard*, referred to in the note to *Reg.* v. *Chapman;* and the case of *Reg.* v. *Stroner*, 1 C. & K. 650, decided in 1845. The supreme courts of some of our sister States have recognized this rule (*State* v. *Magoon*, 50 Vt., at pages, 339, 340; *Territory* v. *Hanna*, 5 Mont. 248 [5 Pac. 252]; *Donaldson* v. *Com.*, 95 Pa. St., at page 24), though more of them have rejected it (*State* v. *Martin*, 24 N. C., at pages 119, 120; *State* v. *Smallwood*, 75 N. C., at page 106; *State* v. *Eaton*, 75 Mo., at page 593; *State* v. *Cain*, 20 W. Va. 685–693; *Selph* v. *State*, 22 Fla. 542 *et seq.;* *Keller* v. *State*, 123 Ind. 110 [23 N. E. 1138, 18 Am. St. Rep. 318]; *Morrow* v. *State*, 57 Miss. 836).

Whether or not this rule which compels the people to call such witnesses permits their impeachment by showing prior contradictory statements has received the attention of the English courts. *Rex* v. *Oldroyd*, Russ. & R. C. C. 88, was decided in 1805, before it had been determined that it was the duty of the prosecution to put upon the stand as its witnesses all the observers of the transaction; and we are informed in that case that:

" The counsel for the prosecution, at the close of their case, observed to the learned judge that they did not mean to call the mother of the prisoner, strong suspicions having fallen upon her as having been an accomplice; but the judge thought it right, in compliance with the usual practice (her name being on the back of the indictment as having been examined before the grand jury), to have her examined, which was accordingly done. The learned judge, observing, upon this examination, that the evidence given by the woman was in favor of the prisoner, and materially different from her deposition taken before the coroner, thought it proper to have the deposition read, for the purpose of affecting the credit of her testimony so given on the trial."

This ruling was upheld when the case received the consideration of all the judges, and we are told:

"The determination of the judges was confined to the right of a judge to call for a witness' deposition in order to impeach the credit of a witness who on the trial should contradict what she had before deposed; but Lord Ellenborough, and Mansfield, C. J., thought the prosecutor had the same right."

Says Baron Bolland, in the case of *Wright* v. *Beckett*, 1 Moody & R. 414, decided in 1834, in speaking of this case (page 431):

"It is to be observed that the determination of the judges was confined to the right of a judge to call for a witness' deposition in order to impeach the credit of such witness, who on the trial contradicts what he had before deposed. * * * It is clear that the counsel for the prosecutor did not consider that he possessed such right, or he would have called the witness at all events, and availed himself of her evidence if favorable, knowing that he could destroy it if she gave evidence contrary to that which she had given before the coroner, by putting in her deposition. To do this, it is, I think, clear that the counsel had no right."

It is interesting, and perhaps material to the subject under discussion in this opinion, to note that, in the case of *Wright* v. *Beckett*, Lord Denman, Chief Justice of the Court of King's Bench, affirmed, and Baron Bolland

denied, that in a civil case, where a witness gives evidence destructive to the case which he was called to prove, the party calling him may, in order to neutralize his evidence, show that he had, before the trial, given to the attorney an account of the transaction entirely different from that sworn to by him.

In *Reg.* v. *Ball*, decided in 1839, reported in 8 C. & P., at page 745 (the same volume in which are reported the decisions upon which this court relied in deciding that the people must call as witnesses all the observers of the transaction), defendant, Ball, was indicted for wounding Joseph Newey, with intent to murder him. The whole case turned on the identity of defendant, Ball, whom the prosecutor had never seen before the evening of the assault, when he swore that he had seen him in the beershop of Mrs. Sarah Turner. The prosecution called Sarah Turner, who contradicted the prosecutor as to the fact of defendant, Ball, having been at her house on the evening in question. This witness kept a beershop, and was intimately acquainted with the defendant and his accomplices, and had been informed against by the prosecutor for keeping her house open at improper hours. In order to do away with the effect of the evidence of this witness, which, if believed, disproved the whole case of the prosecution, it was proposed by the counsel for the prosecution to prove that the statements made by the witness before the magistrate were wholly inconsistent with the account given at the trial. Erskine, J., after having conferred with Mr. Justice Patteson, whom all lawyers will recognize as one of the great English judges, rejected the evidence, saying, "You cannot put in evidence for the purpose of discrediting your own witness."

In the case of *Reg.* v. *Stroner*, 1 C. & K. 650 (this is one of the cases upon which this court relied in *Maher* v. *People* as determining the common-law rule), Chief Baron Pollock required the prosecution to put on the witness stand two witnesses who were in attendance as witnesses for the defendant, saying, "They must both be called as

witnesses for the prosecution, but I shall allow counsel for the prosecution every latitude in examining them."

Thus far do the English cases go. I think I am right in saying that the only case directly in point is *Reg.* v. *Ball*, and there it was held that even the deposition of a compulsory witness is not admissible for the purpose of impeachment. In my judgment, there is force in the suggestion that, when this court recognized the English rule as a part of the common law, they recognized it as declared by the English courts.

Text-writers tell us that the rule that a party shall not impeach a witness called by him, by showing prior contradictory statements, does not apply where the law compels him to call that witness. See Rap. Wit. § 213. It is believed that in every adjudication upon which this claim is based, except *State* v. *Slack*, 69 Vt. 486 (38 Atl. 311), hereinafter referred to, the party has been permitted to prove the prior statements of a subscribing witness to a deed or will, to contradict his testimony that the grantor or testator lacked competency to execute the instrument. See *Williams* v. *Walker*, 2 Rich. Eq. 291 (46 Am. Dec. 53); *Harden* v. *Hays*, 9 Pa. St. 151; *Dennett* v. *Dow*, 17 Me. 19; *Shorey* v. *Hussey*, 32 Me. 579; *Whitman* v. *Morey*, 63 N. H. 448 (2 Atl. 899); *Thornton's Ex'rs* v. *Thornton's Heirs*, 39 Vt. 122. The exception recognized by these authorities is eminently just. A witness, by solemnly attesting an instrument, certifies to the competency of its maker, and thereby furnishes evidence of its legal execution. If the witness dies or cannot be procured, proof of his signature furnishes sufficient legal evidence. *Abbott* v. *Abbott*, 41 Mich., at page 543 (2 N. W. 810); *Orser* v. *Orser*, 24 N. Y. 52, 53; *In re Alpaugh's Will*, 23 N. J. Eq., at page 508; 3 Redf. Wills, 42. When this witness denies that the maker possessed that competency, he impeaches the evidence furnished by his own solemn act. The ends of justice are subserved, and no injustice can result from impeaching him by his own contradictory statements.

Injustice may, however, result from extending that exception to the case under consideration. The witness Pearl Arnold does not stand toward the offense charged against the defendant in the attitude that a subscribing witness stands toward a deed or will which he attests. She has made no certificate of her knowledge of defendant's offense. She denies that she possesses any such knowledge. Defendant denies that she possesses any such knowledge. If her contradictory statements tending to prove that she does possess such knowledge, and that defendant is guilty, are admitted, is it at all likely that the jury will use them for no other purpose than to discredit her testimony? The minds of men are not so constituted that they will stop at that point. We are bound to know that such a statement will have a moral weight in producing a conviction of defendant's guilt.

If the majority opinion is right, no harm was done in this particular case, because it is asserted that the evidence in the case "clearly establishes the fact that he [defendant] had sexual intercourse with her [Pearl Arnold], and that he was the father of the child." If it were material to this discussion, I should endeavor to show that the evidence in this case was not so conclusive that we can say, as a matter of law, that, without giving an improper weight to this testimony, which I am trying to show was erroneously admitted, the jury was bound to convict. Granting, however, that it is true, we must not forget that the rule we are declaring will be a rule for all future cases, and that it may apply to cases in which innocent men are charged with crime.

We will assume, as we may, that an innocent person is charged with crime; that another, one of degraded character, possessing no knowledge whatever of defendant's guilt, has nevertheless falsely stated that he had such knowledge. This person has no right whatever to be a witness on the trial, and defendant does not call him. But the prosecution does, and, after he has truthfully denied knowledge of any fact indicating defendant's guilt,

other witnesses, for the avowed purpose of impeachment, testify to his *ex parte* contradictory statements, indicating such guilt.  If this practice were adopted in such a case, it might result in the conviction of an innocent man on the unsworn statement of one whose *testimony* is unworthy of belief.  This fact—that the controversy may be determined by the contradictory statements of one who may have no knowledge whatever of the facts—distinguishes this case from those in which a party has been permitted to impeach subscribing witnesses, and therefore it is not, in my judgment, governed by the law applicable to them.

It is true, in the case of *State* v. *Slack*, 69 Vt. 486 (38 Atl. 311), it was decided, contrary to the case of *Reg.* v. *Ball*, that the principle which permits one to impeach a subscribing witness called by him does permit the State to impeach one of its witnesses.  There the State, in its opening, called Orson Sargent as a witness to prove flight.  The prisoners called him in defense to prove innocence.  The State, for the purpose of discrediting his testimony, was permitted to introduce a copy of the record of his conviction for selling liquor contrary to law.  In deciding that case, the court was not compelled to consider the precise question presented in this case, namely, the injustice which might result from introducing the *ex parte* statements of a witness, tending to indicate defendant's guilt, when the witness himself testifies that he has no knowledge of such guilt.

The argument that one may impeach a witness whom the law compels him to call is persuasive, if the only reason for the rule forbidding such impeachment is that, by producing such a witness, one vouches for his credibility.  We can best determine the reason for the rule by ascertaining the purpose accomplished by it.  If I am right in the claim that the recognition of this proposed exception to the rule will tend to confuse the issue, and may result in the conviction of an innocent person on unsworn testimony, it is not true that the only reason for the rule is that, by pro-

ducing a witness, a party vouches for his credibility. The rule serves the purpose of simplifying the issue, and this alone is a sufficient reason for its existence. An eminent author (see Thayer's Preliminary Treatise on Evidence) has pointed out that many of our rules of evidence, otherwise arbitrary and unreasonable, exist because they tend to direct and confine the attention of the jury to the main issue in controversy. Prof. Thayer makes clear in this treatise that our law of evidence excludes from the consideration of the jury many facts which have a remote, but material, bearing on the controversy. This is done because it is safer and wiser to risk the consequences resulting from their possibly incorrect notions of these facts, than it is those which would result from multiplying and confusing the issues.

Under our practice, the prosecution is not so bound by the testimony of any witness that it may not contradict him respecting any material fact; and it may, for the purpose of inducing a witness to change his testimony, call his attention either to his testimony on the preliminary examination or to his affidavit. See *People* v. *Case*, 105 Mich. 92 (62 N. W. 1017); *People* v. *Gillespie*, 111 Mich. 241 (69 N. W. 490). It may be, as perhaps this controversy proves, that the cause of justice might sometimes be advanced if a witness could be impeached by proving prior contradictory statements. While it is a conclusive answer to this argument to say that the court is powerless to change the law, which, in my judgment, as already shown, excludes such testimony, the foregoing considerations indicate that, if the law were changed to do justice in this case, it would result in great injustice in other cases.

I think, therefore, that the conviction should be set aside, and a new trial ordered.

MOORE, J., concurred with CARPENTER, J.