WESTPHAL *v.* ST. JOSEPH & BENTON HARBOR STREET-RAILWAY CO.

1. PERSONAL INJURIES — CONTRIBUTORY NEGLIGENCE — QUESTION FOR JURY.
   Where plaintiff's testimony showed that he was using due diligence to get out of the way of an approaching car, and one of his witnesses, on cross-examination, stated that he went right on the track in front of the car, the question of contributory negligence should have been submitted to the jury.

2. WITNESSES—IMPEACHMENT.
   A party cannot impeach his own witness by showing contradictory statements made by him, on the ground that his testimony on cross-examination was not such as expected.

3. SAME.
   A party is not bound by the statements of his witness if the testimony of other witnesses shows a different state of facts.

4. STREET RAILWAYS—NEGLIGENCE—QUESTION FOR JURY.
   Where plaintiff, while driving along the street, exercising due care, was struck by a street car approaching from behind, the question whether the company was negligent in failing to check and control the car was for the jury.

Error to Berrien; Coolidge, J. Submitted June 10, 1903. (Docket No. 67.) Decided July 14, 1903.

Case by Frederick Westphal against the St. Joseph & Benton Harbor Street-Railway Company for personal injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

Plaintiff was driving his horse, hitched to a road wagon, over the Wayne-street viaduct, over a bayou of the St. Joseph river, between the cities of St. Joseph and Benton Harbor. The viaduct is 300 feet long and 19 feet wide, with guard rails on either side. The defendant has two tracks across this viaduct. The street slopes gradually from the bluff on the southwesterly bank of the bayou to

the level of the river bottom on the opposite side. In crossing over this viaduct, vehicles must of necessity travel upon the street-railway tracks. Plaintiff came from a street running at right angles with Wayne street. As he approached the tracks he looked for a car, but saw none, and then turned to the left to cross the viaduct. When about the middle of the viaduct he heard a signal bell, looked around, and saw a car approaching. The car struck the hind end or hind wheel of his wagon, overturned the wagon box, and threw him to the ground. He was sitting on a spring seat near the front of the box. The box sat loose on the wagon. He testified that the box was thrown from the wagon, but the wagon did not tip over. The negligence charged is the propulsion of the car at a high, dangerous, and negligent rate of speed, and failure to reasonably control and check the speed of the car.

Plaintiff testified:

"When I heard the bell, I tried to get out of the track. To get off the track, I turned to my left, so I tried to get out. I do not know where my horse was when the wagon was upset. When the car struck me, the horse was on the left-hand track. I had guided him off the right-hand track. At the time I was struck, the front wheels of my wagon were pretty near over to the left rail. The hind wheels were over to the right rail on the right track. At the time I was struck, my horse was over on the left-hand track. My wagon is about eight feet long. I couldn't tell how far apart the inside rails of the street-car track are. At the time the car struck me, my horse was headed to the left. His front feet were in the left-hand track. And he was headed towards the canal, and the front wheels were in the left-hand track, too, and the hind wheels,—one was between the two tracks and one in the track. This at the time the car struck me."

One Samuel Hannon, a passenger on the street car, was called as a witness for the plaintiff. He stood on the platform beside the motorman. On direct examination, Mr. Hannon testified that, when the car first struck the wagon, the horse was angling across the track; that,

when plaintiff was thrown from the seat, he struck upon his feet; that the horse began to run, that plaintiff's feet became entangled in the lines, and he was dragged for a short distance. On cross-examination he testified that plaintiff was pulling his horse to the right onto the track, rather than to the left and away from it.

Defendant introduced no testimony, and the court directed a verdict for the defendant on the ground that "Mr. Hannon's evidence shows such negligence on the part of the plaintiff that he cannot recover legally."

*Gore & Harvey*, for appellant.

*Humphrey S. Gray* and *M. L. Howell*, for appellee.

GRANT, J. (*after stating the facts*). 1. If recovery depended upon the testimony of Mr. Hannon, the court may have been right in directing a verdict. But plaintiff was not bound by his testimony. Plaintiff's counsel claim that they were taken by surprise by the testimony given upon cross-examination. According to plaintiff's testimony, he was using due diligence to get off the track of the approaching car, and to give the car the right of way. It is undoubtedly true that Mr. Hannon was in better position to observe the manner of the accident and the speed of the car than the plaintiff, who testified that, as soon as he heard the bell, he attempted to put himself in a place of safety; but this did not make his testimony conclusive. We think the question of plaintiff's negligence should have been submitted to the jury.

2. Plaintiff's counsel subjected Mr. Hannon to a rigid redirect examination, and asked him if he had not made certain contradictory statements to certain persons, which he denied. They then sought to show these contradictory statements, which were excluded by the court. If, under any circumstances, a party litigant may, in a civil action, impeach his own witness, whom he is not obliged to call, by proving contradictory statements, this case is not one to justify the practice. The witness was not asked upon

direct examination in which direction plaintiff was guiding his horse. On cross-examination he testified that he was pulling the horse's head to the right instead of to the left, as he should have done. A party will not be permitted to impeach his own witness by showing contradictory statements made by him because his testimony on cross-examination is not such as he expected the witness to give. We settled this question in criminal cases in *People* v. *Elco*, 131 Mich. 519 (91 N. W. 755), where the people are obliged to call the witnesses. The rule has not been extended by this court in civil cases, when a party is under no obligation to call the witness. Counsel cite *Darling* v. *Thompson*, 108 Mich. 218 (65 N. W. 754), and *Smith* v. *Smith, Sturgeon & Co.*, 125 Mich. 234 (84 N. W. 144), as supporting their contention. Counsel are in error. These cases and other similar ones hold only that the party calling the witness is not bound by his testimony, if the testimony of other witnesses shows a different state of facts.

3. Defendant contends that there was no evidence of negligence on the part of the defendant, and that for this reason the verdict should be sustained. If the sole claim of negligence had been that the defendant propelled its car at a high, dangerous, and negligent rate of speed, the court might have been justified in holding that no negligence in this respect was shown. But the other negligence alleged was the failure to reasonably check and control the speed of the car. The care to be used in keeping a car under control depends upon the circumstances of each particular case. Greater care would be required in some cases than in others. The car, heavily loaded, was approaching the plaintiff upon down grade. Plaintiff was entitled to reasonable time, by the exercise of reasonable effort, to drive his wagon out of reach of the approaching car. If plaintiff was exercising due care, which must be the first question to be determined by the jury, we think that the question of defendant's negligence belonged to the jury. *Rouse* v. *Detroit Electric Ry.*, 128 Mich. 153

(87 N. W. 68); *Hicks* v. *Citizens' Ry. Co.*, 25 L. R. A. 508 (S. C., 124 Mo. 115, 27 S. W. 542).

Judgment reversed, and new trial ordered.

The other Justices concurred.