128  149
134 ¹242

128  149
s135 546
135  547

128  149
139 ²255

128  149
d142 ¹ 27

128 149
f150 ⁴498

## ROUSE *v.* DETROIT ELECTRIC RAILWAY.

1. STREET RAILWAYS — COLLISION WITH VEHICLE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Plaintiff's intestate was riding in a wagon with a companion, who drove slowly along the beaten track of the highway, after dark, between the highway ditch and the track of an electric railway. They were expecting a car to come from behind, and at intervals turned to see whether it was approaching. The last time intestate looked he discovered the car close upon them, and called to his companion to turn out, which the latter attempted to do, but, owing to the high rate of speed of the car, was unable to get out of the way in time to avert a collision. *Held*, not to show contributory negligence as a matter of law.

2. SAME—SPEED OF CAR—EVIDENCE.

The car men testified that the car was running only about six miles an hour, and that it could not run any faster on the street where the accident occurred, because of lack of power and rough track. *Held*, that evidence as to the speed of cars on such street at times other than the occasion of the accident was admissible in rebuttal.

3. DEATH BY WRONGFUL ACT—DAMAGES.

To justify a recovery under the statute for death by wrongful act, there must be a showing of some pecuniary injury.

4. SAME—INSTRUCTIONS.

In an action for the wrongful death of one who left surviving him a widow and several children, of whom one daughter was married, an instruction that the measure of damages would be the present worth of the sum that deceased would probably have given his family during his expectation of life, as shown by the tables, but overlooking the limitations as to the life expectancy of the widow, the minority of the children, the marriage of the daughter, and deceased's earning capacity, was erroneous.

Error to Wayne; Hosmer, J. Submitted June 4, 1901. Decided July 19, 1901.

Case by Sarah Rouse, administratrix of the estate of

Henry Rouse, deceased, against the Detroit Electric Railway, for the alleged negligent killing of plaintiff's intestate. From a judgment for plaintiff, defendant brings error. Reversed.

*T. T. Leete, Jr.*, for appellant.

*Howard B. Bloomer* (*Alfred Lucking*, of counsel), for appellee.

Long, J. This action is brought to recover damages for the death of Henry Rouse, occasioned by the claimed negligence of the defendant. It appears that Rouse, plaintiff's intestate, a teamster, was riding with his son-in-law, one Garlick, also a teamster, in an ordinary dirt wagon, along Oakland avenue, in the city of Detroit, on the night of September 6, 1898. The men had been some eight miles out in the country, and about 8 o'clock that night, in returning, they drove along Oakland avenue. The defendant operates a double-track street railway on this avenue. Its cars in going north pass over the east track, and in returning southward in the city pass over the west track. Rouse and Garlick entered upon Oakland avenue north of the north terminus of these car tracks, the tracks there forming a "Y," so that the cars may turn and proceed back to the city. After the men had driven over the "Y," going south, they saw the car pass them, going north on the east track. It appears that they knew that the car must turn and follow them south on the west track. They were going south between the west track and a ditch on the west side of the avenue, the street being an unpaved one. The distance between the car tracks and the ditch is in some dispute; the plaintiff's witnesses putting it between 9 and 10 feet, and the defendant's between 10 and 11. The parties could see that there was a ditch along the side of the wagon track, but Mr. Garlick claims they could not tell in the dark how deep or dangerous it was, or how close to their wheels; and there was some evidence tending to show that at places the

roadway was so narrow that teams were driven into the ditch in the daytime when cars were passing.  The ditch was from 18 inches to 2 feet deep.  They had never passed over this road before; and the plaintiff's claim is that they were driving carefully and slowly, that the team was on a walk in the beaten track made by the regular travel, and that Garlick, who was driving, kept the reins steadily in his hands, and let the horses go along the regular way. It appears that the footboard of the car lapped over the roadway outside of the rail 2 feet, leaving only 8 feet or less between the car and the ditch; that the wagon, from hub to hub, lacked 1 inch of 6 feet in width.

It is claimed by the plaintiff that the deceased and his companion expected that the car would go back, and so kept looking around; that Rouse looked around two or three times; that, the last time he looked, he discovered the car not far behind them, coming rapidly; that he called to Garlick to gee out, which Garlick says he did as soon as possible; but that the wagon was struck just north of the alley north of Westminster avenue, and overturned, injuring Mr. Rouse, and from which injuries he shortly after died.  It is also the claim of plaintiff that the car was running at a rate of speed of more than 25 miles an hour; that, when the wagon was struck, it was with such force that a new white-oak reach, 5 inches wide by 2¼ inches thick, was snapped like a pipestem; that the motorman applied the brakes instantly, and yet the car ran 305 feet farther before it could be stopped; that, when the wagon was struck, the horses galloped away; that the car shot past the horses, and, although they were on a gallop or run, they crossed the track behind the car which passed them, 140 feet south of the place of the accident.  It is also the claim of the plaintiff that, as soon as the parties discovered the car approaching, Garlick hastened to drive to the edge of the ditch, out of the way of the car, but it was coming with such speed that it was too late to escape it.

It was the claim of defendant that, just before the car

struck the wagon, the horses turned towards the track, bringing the wagon so near the track that the car ran against it. The motorman testified on his cross-examination that: "The first I saw of the wagon, it was about 5 feet ahead of my car;" and further that: "I could not swear that I noticed in that 5 feet that they turned nearer to the track, and that I would have cleared them if they had been as far away as they had been 5 feet before."

The court submitted the question to the jury under the claims of the respective parties. The jury returned a verdict in favor of plaintiff for $5,550.

1. Defendant's counsel contends that the negligence of Mr. Garlick, the driver, contributed to the accident, and the plaintiff was not entitled to recover; that the admission of Garlick that he did not see the car until it struck him is conclusive evidence of contributory negligence. We think this contention cannot be sustained. According to Garlick's testimony, they were on the lookout for the return of the car. Sometimes Rouse looked backward, and at other times Garlick. He testified that the car was running at a very high rate of speed. Counsel for defendant contends that the case is governed by *Fritz* v. *Railway Co.*, 105 Mich. 53 (62 N. W. 1007); *Blakeslee* v. *Railway Co.*, 105 Mich. 468 (63 N. W. 401); *Doherty* v. *Railway Co.*, 118 Mich. 209 (76 N. W. 377, 80 N. W. 36). We think these cases are not controlling of the present. The *Fritz Case* was put expressly upon the ground that the driver of a milk wagon turned suddenly and unexpectedly in front of the car. It was said in that case: "It is not a case in which the plaintiff had been driving up the track, and was run down by the motorman, but an attempt to cross the track, unexpected and sudden." The *Blakeslee Case* was put upon the same ground,—that a sudden turning in front of the car, without any effort to ascertain if a car was coming, was the cause of the accident. In the *Doherty Case* a pedestrian was held guilty of contributory negligence in entering upon the railway track in front of an approaching car,

which would have been visible to him had he looked when within two or three feet of the track.

The present case falls within the rule laid down in *Manor* v. *Railway Co.*, 118 Mich. 1 (76 N. W. 139). In that case a woman was driving a covered milk wagon alongside the track, in the ruts made by travel. She heard a bell behind her, and attempted to turn out farther, but, before she could do so, her wagon was struck. It was held that the question of contributory negligence was for the jury. It was said by this court:

"She had a right to drive down the track, just as she did; and if she turned out, or tried to turn out, immediately on the sounding of the gong, she was blameless, and there is no contributory negligence in the case. * * * A man may drive ahead of you with a wagon, * * * but you must wait until your opportunity comes to pass; and the same rule applies to street cars."

The court instructed the jury in accordance with the rule in the *Manor Case.*

2. It is claimed that the court was in error in admitting testimony as to the speed of the cars upon Beaubien street and Oakland avenue at other times than on the occasion of the accident. We think there was no error in this. The car men had testified that the car was running only about six miles an hour, and evidence was called out from them by defendant's counsel that the cars could not run any faster there because of the lack of power and rough track. The evidence objected to was admitted in rebuttal.

3. The principal contention in the case is that the court was in error in its charge as to the measure of damages. The court charged the jury:

"I am asked to charge you, and I do charge you, that there can be no recovery in this case for any pain or suffering or other injury of the deceased caused by the accident to Henry Rouse; that the only damage that can be awarded in this case, if the plaintiff is entitled to recover, is the pecuniary injury which has been occasioned by the death of Henry Rouse. * * * If the plaintiff is entitled to recover, she is entitled to recover that pecuniary

damage, that actual, money damage, which she has suffered by being deprived of the money which her husband would have given her—given to the family—during his lifetime. In determining how long he should live, you may take into consideration the American Experience Tables, which are published, I think, in Howell's Statutes, which show the average expectation of life, at his age, 25.99 years; and you may properly find that Mr. Rouse would likely have lived that much longer. Now, the question is what he would have contributed to his family during that time,—what it is probable he would have contributed. You have heard the testimony as to the amount that he had earned. What was it probable that he would have earned in the future, and what portion of his earnings is it probable would have gone to his family? It is possible, gentlemen, as the children grew up, that they themselves might have contributed to the family, and his own contribution might not have been so much. It is possible that quite the contrary might have been the case,—that his own contribution as the children grew might have been equally large. But all these are questions for you, and not questions for the court.   *   *   * "

The deceased left surviving him a widow and seven children,—one of them a married woman, the wife of Mr. Garlick. It is the claim of defendant's counsel that the charge of the court that the damages would be the present worth of the sum that deceased would probably have given his family during the period of 25.99 years, his expectation of life, was erroneous, because four limitations were entirely overlooked: (*a*) The expectation of the life of the widow; (*b*) the minority of the children; (*c*) the marriage of one daughter; (*d*) the earnings of the deceased.

In *Hurst* v. *Railway*, 84 Mich. 545 (48 N. W. 46), the question of the measure of damages for the death of a minor is discussed. It was said:

" There would be a limit upon this, dependent upon the probable duration of the lives of the parents, as no estimate of such prospective earnings [of the son] could extend beyond the expectancy of the lives of the parents and the survivor of them."

In that case the measure of damages was also limited to

the prospective earnings of the child until he became 21 years of age, taken in connection with his prospect of life, less the expenses of his own care and support.

The law requires in this class of cases that the administrator must show that some person has suffered some pecuniary injury by the death. The statute does not imply that damages and pecuniary loss necessarily flow from the negligent killing. This is a matter that must be made to appear by the proper allegation in the declaration, and proof of the fact. *Hurst* v. *Railway, supra.* See, also, *Nelson* v. *Railway Co.*, 104 Mich. 588 (62 N. W. 993); *Walker* v. *Railway Co.*, 104 Mich. 616 (62 N. W. 1032). These damages must be limited to the pecuniary damage sustained by those legally entitled to support. *Van Brunt* v. *Railroad Co.*, 78 Mich. 530 (44 N. W. 321).

We think counsel for defendant correct in saying that these limitations should have been stated to the jury. Damages should have been limited to the expectation of the life of the widow. As to the children, no damages could be recovered for their support after they each became of age, and none for the maintenance of the married daughter. The court should also have instructed the jury that the amount of the recovery must be based upon the earning capacity of Mr. Rouse as shown by the testimony; that it would be the present worth of the sum of money he might earn during his expectancy of life and devote to his family, but limited by the expectancy of the life of the widow, if her expectancy of life was less than that of her husband, and the minority of the children, so far as they were concerned in the fund. We do not pass on the question whether damages might be allowed for a dependent child after he becomes of age.

For this error in the charge, the judgment must be reversed, and a new trial ordered.

The other Justices concurred.