HIBBLER v. DETROIT UNITED RAILWAY.

1. Highways and Streets — Negligence — Street Railways — Snow and Ice—Use of Snowplow.

In traveling along a highway upon which ran an electric interurban road, that in time of deep snow cast it into the traveled portion of the road so as to render the highway difficult of use and so as to make it necessary to drive, in several places, along the track, plaintiff was not guilty of contributory negligence for driving upon and along the tracks, exercising at the same time due vigilance and caution.

2. Street Railways—Negligence.

It is the duty of employés of an interurban railway operating its cars along the traveled highway to have due regard for known conditions where the highway is so obstructed with the snow that the public have been obliged to drive on the

tracks, and to take reasonable precautions to avoid accidents which the conditions render more probable.

3. SAME—HIGHWAYS AND STREETS.

Where evidence tended to show that, in places, the snow had drifted next to the fence and was very deep, that it had been thrown at such points on the road by defendant's snow-plow, making a pile from three to four feet high, and in some places a sleigh could not travel on the beaten road, that the snow lay in chunks and uneven, and the public in numerous places had to drive on the tracks, presented an issue for the jury as to defendant's negligence in contributing to the impassable condition of the highway.

4. SAME.

And while it was not unlawful for defendant to shovel snow from its tracks within reasonable limits and accumulate it on adjacent portions of the road, defendant was bound to have due regard to the rights of the traveling public, and not render other portions of the highway impassable.

5. SAME—SPEED OF CAR—NEGLIGENCE IN STOPPING.

Evidence that the motorman first saw plaintiff and his team on the track 600 feet away, that he was running from 40 to 45 miles an hour and kept the power on until he reached the foot of the hill from which he first caught sight of plaintiff, that he then reversed the power, applied the brakes and blew the whistle, that under normal conditions he could stop the car at that rate of speed in about 400 feet, if he used the reverse, and that the car struck the rig with great force, killing two animals which were behind the wagon, and running several rods, shoving the dead animals ahead of it, raised an issue as to the motorman's negligence.

6. SAME—TRESPASS.

Plaintiff could rely on the motorman's performing his duty to keep sufficient watch of the track to have his car under reasonable control; and he was not a trespasser.

7. SAME—CARE REQUIRED.

Persons passing along the tracks under such circumstances are required to exercise only that degree of care which a reasonably prudent person would exercise under like conditions.

Error to Oakland; Smith, J. Submitted June 12, 1912. (Docket No. 61.) Decided October 7, 1912.

Case by Philip Hibbler against the Detroit United

172 MICH.—24.

Railway for personal injuries. Judgment for plaintiff.
Defendant brings error. Affirmed.

*James H. Lynch,* for appellant.

*Andrew L. Moore,* for appellee.

STEERE, J. This is an action brought by plaintiff to recover damages for personal injuries sustained on the evening of December 31, 1910, through being struck by one of
defendant's interurban cars, while he was driving a team
of mules, drawing a wagon, along the highway between the
cities of Detroit and Pontiac. The case was tried before a
jury in the circuit court of Oakland county, resulting in a
judgment on verdict for plaintiff, in the sum of $1,500, and
defendant has removed the proceedings to this court for review on a writ of error, claiming that a verdict should
have been directed in its favor.

Defendant owns and operates a double-track, electric
railway system, running along said highway, connecting
the two cities, and passing through the two villages of
Birmingham and Royal Oak. This highway, known in
its early history as the "Saginaw Pike," is conceded to be
approximately 60 feet in width between the fences. Most
of the way outside the two terminal cities, and including
the place of the accident in question, defendant's tracks
are laid along the easterly side of the highway, occupying
32 feet, and leaving 28 feet of the original 60 feet for general public travel. Between Pontiac and Birmingham
the ties are laid practically on a level with the roadway,
the rails resting on the ties and projecting 4½ inches above.
On the morning of December 31, 1910, the plaintiff, a
farm laborer, was sent, by a Mr. Simpson, his employer,
to Detroit, with instructions to bring back to Pontiac a
team of mules, a wagon, and two horses, recently purchased by Mr. Simpson. Plaintiff left Detroit on his return shortly after noon, driving the mules hitched to the
wagon, and leading the horses tied behind. The wagon

was a heavy one, with tires 1¾ inches in width. It was winter weather, and there was considerable snow on the ground, which had drifted some in certain places. The testimony is not harmonious as to the exact depth of snow, or extent of its drifting. Plaintiff appears to have progressed rather slowly, and is shown to have arrived at Birmingham, which is seven miles from Pontiac, after nightfall. He stopped there to get warm, it being a cold night, and while there drank a glass of beer. Resuming his journey, he had more or less trouble driving on the usually traveled portion of the highway. His mules were sharp shod, and with their small feet did not travel easily in the snow. In places he found it necessary, or at least easier, to drive along the railway track, from which the snow had mostly been removed. It is the claim of plaintiff that at certain points on the route the snow had been thrown on the side by defendant's snowplow in such quantity and in such manner as to render the usually traveled way difficult and practically impassable. When within about a mile of Pontiac, at what plaintiff claims was a bad portion of the road, which compelled him to drive along the railway track, a south-bound car, running at the rate of 40 miles an hour, came in sight over a hill in front of him. As soon as he saw it, he at once started to turn off the track, but owing to a steep bank of deep snow at the side, in which one of his mules got fast, he could not do so in time, and the car caught him. Three of the animals were killed, and plaintiff was seriously injured. His right leg was broken, his shoulder and neck sprained, and his face and head were cut with glass and bruised by his striking the vestibule of the car. He was under the care of a physician and confined in the hospital for about a month, experiencing much suffering. No issue is raised as to the nature, manner of receiving, or extent of his injuries, or the size of the verdict, provided it were shown any legal liability on the part of defendant existed.

The declaration alleges, and plaintiff claims to have shown, two grounds of recovery: *First,* that defendant

carelessly and negligently deposited from its tracks upon the traveled way large quantities of snow, piled up in such manner as to render it unsafe and unfit for travel; *second,* that defendant's motorman ran his car in a careless and reckless manner, regardless of the rights and safety of plaintiff, although, had he been attentive and vigilant, he could have seen plaintiff and stopped his car in time to avoid the collision, or, at least, to have greatly reduced its force and effect. Defendant's request for a directed verdict and subsequent motion for a new trial were denied; the issues there raised being comprehended within these two assignments of error:

"That the court erred in submitting the cause to the jury, for the reason that, under the evidence in said cause, the plaintiff was himself guilty of contributory negligence," and "that the court erred in submitting the said cause to the jury, for the reason that under the proofs in said cause the said defendant was not guilty of any negligence which contributed to the bringing about of the injuries of which plaintiff complains."

It appears that during the winter, and prior to the accident, considerable snow had fallen, accompanied at times with some drifting. Defendant, as occasion required, used a snowplow to clear its tracks. The plow proper was a V-shaped projection in front of the car, in addition to which there were attached to the sides of the car wings, made of oak planks, about 15 feet in length, to push the snow still farther back and away from the tracks. These wings were so attached to the car that they could be swung at different angles and set at various pitches, as desired. The snow plowed from the westerly track going to either side accumulated partly on the traveled way and partly on the space between the two tracks, called by the railroad men the "devil strip," for reasons not given, but which can be imagined in times of deep snow. Defendant's testimony shows that it plowed the snow from the entire system on December 26th, and went over the road with the snowplow practically each day thereafter until

the accident; the plow being run between Pontiac and Birmingham on that day.. There is much testimony tending to show that the 28 feet of roadway beside the tracks was in bad condition, heavy with snow and difficult to travel at that time, and that the action of defendant in throwing the snow from its tracks upon it contributed largely to that condition.

If the portion of the highway to the west of the tracks was rendered impassable, or unsafe for travel in places by reason of defendant thus throwing the snow from its tracks upon it, a person having occasion to travel along that public highway would have a right to drive upon the tracks, where necessary to effect a passage, exercising, of course, reasonable caution, vigilance, and care.

It was also the duty of defendant's employés in operating its cars along a traveled highway, to have due regard for known conditions, and take reasonable precautions to avoid accidents which such conditions rendered more probable.

Numerous witnesses testified as to the deep snow and bad condition of the road, and the necessity of driving onto the tracks in places to effect a passage. There was testimony that the snow in places had drifted next to the fence and was very deep; that at such places it had been thrown up by the plow onto the road next to the track from three to four feet high; that in some places a sleigh would slue so it could not be kept up on the traveled way; that the snow was thrown up by the snowplow in chunks and bunches, and was not level; that, where the accident happened, there was so much snow, and the road so bad that other rigs had also been obliged to drive along the railway tracks; that on the night of the accident an automobile, attempting to go from Detroit to Pontiac, encountered conditions near the place of accident which compelled the driver to abandon the trip and leave his car there for the time being. The evidence produced by plaintiff along these lines was abundant to present an issue for the jury as to defendant's negligence in causing, or

contributing to, a condition of the highway which rendered it necessary for those traveling it to go upon defendant's tracks at different places in order to get through.

It was not unlawful in itself for defendant to shovel snow from its tracks, and within reasonable limits, for a reasonable time, accumulate it on adjacent portions of the road, but such disposition of snow must be made with due reference to the rights of travel on the highway. The defendant would not have the right to go to the extent of rendering other portions of the highway impassable in order that its tracks might be made passable for cars. *Wallace* v. *Railway Co.*, 58 Mich. 231 (24 N. W. 870).

" It certainly cannot be laid down as an unvarying rule applicable to every community and to every street or road, that the company may not cast the snow on the highway at the sides of the track. This would be unreasonable. Nor on the other hand can it be said that it may do so without regard, in the manner of disposing of it, to the effect which that accumulation will have on public travel. Any disposition that it makes of the snow must be made with due regard to the rights of travel upon the highway, and so as not to interfere needlessly, in a practical sense, with the safety and convenience of persons lawfully using the street in an ordinary way." *Stanton* v. *Traction Co.*, 11 Pa. Super. Ct. 180.

The testimony in this case clearly presents an issue of fact as to defendant's negligence in that particular.

The rise in the road towards Pontiac from the place of the accident, called "Hadsell's Hill," prevented the motorman and plaintiff from sooner seeing each other, as both testified. It is undisputed that when the car had gotten over this hill and down to the bottom, so the headlight shone squarely along the track, the motorman had an unobstructed view of plaintiff, where he was in trouble on the track ahead, for 600 feet. He testified that he was running 40 miles an hour when he reached the hill, and possibly 45 miles when he reached the foot, as he kept the power on; that when he saw the rig on the track he threw off the power, pulled the reverse, and blew the

whistle; that the reverse took, but he went to the point of accident as quick as he could snap his finger. On cross-examination, being asked his judgment of the distance in which he could stop the car by using the air brake when running 40 miles an hour, he testifies:

"Under normal conditions it might take it 500 feet with the air brake; now, if you wish to use the reverse, you might stop it in 100 feet less, you might stop it if you wish to use the reverse."

The evidence shows that with 600 feet in which to stop after the motorman saw, or could have seen, the rig in trouble, on the track ahead of him, he struck it with such force as to kill three of the animals, two of which were behind the wagon, and that the car ran on beyond the place of the collision several rods, shoving the dead animals ahead of it.

The negligence of the motorman in the management of the car was put in issue by such evidence, and became a question of fact for the jury.

"It was the duty of the motorneer to have the car under such control as to admit of its being stopped after he became able to discover objects on the track, and before a collision with such objects should occur, and it was his duty to give timely warning.

"If the motorneer had performed his plain legal duty, he would have been able, after discovering plaintiff's position, to have stopped his car and avoided a collision." *Ablard* v. *Railway*, 139 Mich. 248 (102 N. W. 741).

See, also, *Quirk* v. *Railway*, 130 Mich. 654 (90 N. W. 673), and cases there cited. In the latter case two boys were on the track; one drawing the other in a cart to which he had attached himself with some kind of a harness. In turning the cart from the track, it became caught on the rail in some way. The boy in the cart jumped out and escaped, but plaintiff could not free himself from the harness in time. The car struck the cart, and threw him in such a manner that his arm got on the rail, and was cut off. It was held that both negligence

of defendant and contributory negligence of the plaintiff were for the jury.

Defendant's chief contention is that plaintiff was guilty of contributory negligence in driving along the tracks, and failure to keep proper watch for an approaching car. As to plaintiff keeping a proper watch for an approaching car, his testimony is positive that he did. A denial of the truth of his statement can go no further than to raise a question of fact. He testifies:

"I was driving north on the track. I was looking ahead of me, expecting a car. * * * I didn't see any until just as it came up by Hadsell's. * * * The car when I first saw it was just breaking over the hill up in front of Hadsell's. When I saw the car coming, I tried to get up into the road. * * * I tried to pull up into the road, and the snow was deep, and I got one of my mules fast, and I couldn't get up and the car struck me."

This was a public highway 60 feet wide. Though defendant's double tracks occupied and made less safe 32 feet of this width, it was nevertheless all a highway open to public travel. Defendant having, by franchise, authority to lay its tracks and operate its lines on the highway, its cars and ordinary conveyances had equal rights there. One traveling with an ordinary vehicle on a street or road traversed by electric cars has a right to drive over or along the tracks on which such cars run whenever the customary or necessary use of the way permits or requires him to do so, and plaintiff was not in this case *per se* guilty of negligence in driving on the track; nor was he necessarily and as a matter of law guilty of negligence in failing to leave the track in time to avoid collision when a car came along, provided he was keeping watch, promptly proceeded to leave the track as soon as the car came in sight, tried his best to do so, and would have done so in time but for the fact that the condition of the snow thrown up by the defendant resulted in his mule getting fast, thus unexpectedly delaying him. *Manor* v. *Railway Co.*, 118 Mich. 1 (76 N. W. 139); *Rouse* v. *Railway*, 128

Mich. 149 (87 N. W. 68).   This is not a case of a person suddenly appearing on the track at a crossing, in an attempt to cross over ahead of a car, or unexpectedly turning upon the track while passing along the street.   Plaintiff was upon the track, and trying to get off, from the time the car came in sight.   According to his testimony, he was watching for the car, and promptly attempted to leave the track when it appeared.   He had driven on and off the track twice before, only going along it when the condition of the road made it necessary.   Others had done the same, and for the same reason.   The accumulation of snow in the highway and general conditions existing there were presumably known to defendant's employés in charge of the operation of the road.   It was the duty of the motorman also to exercise care and vigilance, and control his car according to known conditions and dangers. Plaintiff had a right to assume that he would do so. Their duties were mutual—one to exercise ordinary prudence to avoid receiving injury, and the other to avoid inflicting it.

" Street railway companies have no such proprietary interest in the portion of the street upon which their tracks are laid as limits the rights of the general public to use the same territory as a part of the public highway, so as to impose upon travelers the duty of keeping themselves and horses out of the way of cars on such tracks." 2 Nellis on Street Railways, § 417.

The cars being confined to the tracks, heavier to handle and unable to turn aside, it is the duty of the ordinary vehicle or foot passenger to vacate the track when cars approach and allow them to pass, but, as emergencies arise, each must seek to avoid collision and guard against resultant injury to himself or others.

The element of trespass, however, is absent, and persons crossing, or passing along, the tracks are only required to exercise that degree of care which a reasonably careful, prudent, and cautious person would ordinarily exercise under like conditions.   Plaintiff had a right to

assume that the operator of the car would exercise like vigilance and care, would have his car under reasonable control, and, when an obstruction in the shape of a vehicle appeared on the track ahead, that he could and would, in an emergency, stop or check his car to avoid a collision. The track was straight between them. Plaintiff was upon it and in sight for a distance of at least 600 feet after the car reached the bottom of the hill. The motorman testified that, even going at the excessive rate of 40 miles an hour, he could, under normal conditions stop the car, by using the reverse, in 400 feet.

"It was a question of fact for the jury to determine whether the plaintiff, under the circumstances, should have been out of the way when the car reached that point, or whether the accident occurred wholly by reason of the negligence of the driver of the car. He could have stopped his car, and avoided the injury. If he saw the plaintiff could not get out of the way in time to avoid a collision it was his duty to stop the car. *Laethem* v. *Railway Co.*, 100 Mich. 297 (58 N. W. 996).

We think the questions of negligence and contributory negligence were properly submitted to the jury under proper instructions.

The judgment is affirmed.

MOORE, C. J., and McALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.