WINGERT v. DETROIT UNITED RAILWAY.

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—STREET RAILWAYS—
TRIAL—INSTRUCTIONS TO JURY.

In the absence of any evidence that would tend to show
negligence on plaintiff's part in trying to turn off de-
fendant's tracks in advance of a moving car, which
struck the end of his vehicle, plaintiff being delayed in
his efforts to escape from the tracks by snow and ice
banked up on either side, the court committed rever-
sible error by leaving to the jury the question of con-
tributory negligence, in plaintiff's failing to clear the
track in time to avoid the collision.[1]

2. STREET RAILWAYS—DUTY TO PERSONS ON TRACK.

The duty of defendant's motorman, when he saw that the
driver of a vehicle on the tracks was making an effort
to escape, and was impeded by slipping of his wheels on
the snow banked at the side, was to delay until the
wagon had left the track, and it was the duty of the
plaintiff to leave the track with reasonable expedition
after he discovered the presence of the car.

3. SAME—REQUESTS TO CHARGE—SNOW AND ICE—REMOVAL.

Plaintiff's requests to charge that defendant corporation
was liable if it left piles or ridges along the street so as
to create obstructions to free use of the streets, was
properly refused by the court.

4. SAME—PERSONAL INJURIES.

Defendant's motorman was, however, bound to operate
his car with reference to all circumstances known to
him, including the liability of the wheels of a convey-
ance to slip or slide along the rails and on the obstruc-
tion created by the snow.

Error to Wayne; Van Zile, J. Submitted June 16,
1913. (Docket No. 111). Decided September 30,
1913.

---

[1] As to injuries by street car collisions with vehicles or
horses, generally, see note in 25 L. R. A. 508.

Case by William Wingert against the Detroit United Railway for personal injuries. Judgment for defendant, and plaintiff brings error. Reversed.

*Clarence P. Milligan,* for appellant.

*Corliss, Leete & Joslyn (William G. Fitzpatrick,* of counsel), for appellee.

OSTRANDER, J. Plaintiff, with one horse and an empty wagon, on which was a rack for carrying empty barrels, was proceeding westward on Monroe avenue in the city of Detroit. He was driving on defendant's track. He knew there was a street car, going west, approaching, and he attempted to leave the track. Defendant's motorman saw plaintiff driving on the track, saw his efforts to leave the track, and, as the car approached the wagon, reduced the speed of the car so that for some distance it approximated the speed at which plaintiff was moving. However, in trying to pass the wagon, the car struck the rear wheel, jolting, but not much injuring, the vehicle, and plaintiff's foot was in some way caught, and his ankle injured. For this injury he seeks in this suit to recover damages. The jury returned a verdict for defendant, judgment was entered, and a new trial was asked for and refused. The errors assigned are based upon the ruling refusing this motion, upon refusals to charge as requested by plaintiff, and upon portions of the charge which was given. Plaintiff requested the court to charge the jury:

"I charge you that it is the duty of the railway company in this case in removing snow from its tracks to adopt such a mode that will not create obstructions in the streets to the detriment of the public or their danger in the ordinary use of the street. In removing the snow, it cannot be permitted to leave it in ridges or piles and make them unsafe for vehicles to pass along. Its rights in this respect are subject and not paramount to the rights of the public

to use the streets for the ordinary purpose of passage, and all acts which create obstructions to the free use of the streets by the public are unlawful, and, if such acts result in injury to others, such company is liable in law for such injuries so sustained."

"I charge you that, if the accident was caused by the rear wheels of the wagon slipping on the ridges of snow toward the track and in the path of the car, and you find the defendant company negligently piled these ridges there in clearing their track, and that but for this the accident would not have happened, the defendant would be liable for having created the obstructions in the street which were the proximate cause of the injury, or one of the concurring causes thereof."

If reversible error was committed in the instructions which were given to the jury, it was in a single particular. The issue of fact was stated in the following language:

"Did this man exercise care and diligence, the ordinary care and prudence of an ordinarily careful and prudent man, in driving this car on this occasion and passing this wagon? Was the wagon in a condition off of the track and clear from the track, at the time when the motorman claims it was, and is claimed by the defendant, and was it so clear from the track that, in your judgment, a careful and prudent motorman would have undertaken to pass the wagon?"

And in the following:

"Now, if you find in this case that this was the condition there, and that this motorman exercised care and diligence in the handling that car, and that the car was slowed down in traveling along there just in the rear of this rack, and that the motorman was watching for an opportunity to pass, and if you further find that he attempted to pass when an ordinary careful and diligent man would have determined that there was room to pass, and that he undertook to pass under such circumstances, and the car was struck because, as it is claimed by the defendant,

it slipped just at the time back onto the track or toward the track, and that the accident could not be avoided by this diligence of the motorman, then, if such is the case, this company is not liable, and your verdict should be for the defendant."

Following the language first above set out, the court also said:

"And did the plaintiff on that occasion do all that an ordinary and careful man would have done to get out of the way of the car? Was the snow in the condition that an ordinary prudent and careful man could have driven that rack off the track and cleared the car?"

Following the other statement, the court proceeded to say:

"On the other hand, should you find that the motorman did not exercise this care and diligence, but that the plaintiff was guilty of negligence in this, that he could, by the use of diligence, have cleared this track far enough to allow the car to pass, having time to do so, and having warning of the approach of the car, * * * then the company is not liable, and your verdict will be for the defendant, because he would be guilty of contributory negligence."

The collision occurred February 7, 1911, in the forenoon. On February 6, 1911, it had snowed all day until 5 o'clock in the afternoon; the fall being more than 12 inches. The maximum temperature February 7th was 24 degrees, the minimum 16 degrees, with three hours of sunshine. Witnesses do not agree concerning all details; but it is undisputed that defendant's snowplow had thrown the snow from the track towards the sides of the street—the curb—and that more or less of a ridge of snow and ice was created between the track and the curb. From the nose of the horse to the end of the wagon plaintiff was driving was about 29 feet, and the distance from the north rail of defendant's track to the curb was about 13 feet. Plaintiff could not leave the

track by driving directly north at right angles to the rails. The line upon which he did leave it made with the rail an acute angle. There is no testimony tending to prove that upon discovering the approach of the car plaintiff did not immediately proceed to leave the track, and none tending to prove that for this purpose he drove carelessly or imprudently. It does not appear that he remitted or relaxed his efforts, which were visible to the motorman of the car. No one testified that he drove off the tracks and then on again. Referring to the testimony of the motorman, it was, in part, as follows:

"*Q.* What was he doing as you observed—how was he trying to get out—as you observed that, what did you do?

"*A.* He was getting out of the way in a kittering direction, and it seemed that he couldn't get out fast because it was slippery; there was ice and snow on the street; the snow was piled up high where the snowplow went through it the day before.

"*Q.* Was there any time before the accident happened that the wagon or rack got off the track, so you could get in the clear?

"*A.* Yes.

"*Q.* What did you do then?

"*A.* I don't understand that.

"*Q.* Was there ever a period of time when you were approaching after the wagon that it was out of the way of the car, so you could go by, as you supposed?

"*A.* Yes, it seemed to slip back.

"*Q.* When did it slip back, with reference to the time that you saw the accident happen; where was your car when it started to slip back?

"*A.* Oh, it was pretty close after the wagon.

"*Q.* From the time it started or seemed to slip back, did you do anything to stop that car?

"*A.* I put on the brakes as soon as I could, and had the power cut off long before that. It was the corner of the car struck the corner or end of the barrel wagon. It broke the side window of the vestibule, right under the window. The car went about three

feet after the accident.   There was no injury to the wagon that I noticed.

"Cross-examination:   When I turned onto Monroe avenue, going west, I saw the man driving his wagon between the rails about 200 feet ahead of me.   I rang the bell right after I left Elmwood.   When he started to pull off the tracks, I was about 50 feet away from him, going as fast as a man can walk.   I could have stopped the car in a car's length, if the rails had not been all slippery.   I knew that I could not stop as quick with a wet rail; but I did not know it was slippery there.   I knew that he could not get off the track as quick with the snow shoveled up beside the street car by the company.   I expected that he could drive away before I got to him.   That is what I would have figured on at the time.

"Q. You knew that the snow being deep and shoveled up there off the track by the street car company, that it would cause him more delay in getting his horse through the snow and the wheels, than if there was no snow there?

"A. No, sir; I did not know that.   It was the first winter I was street carring, and I did not understand.   I was on time that morning, and I was using a double-truck car.   The street is narrow, and the car tracks are in the center.   It is 12 or 13 feet from the car tracks to the curbstone.   I do not know how high the snow was piled up there along the track.

"Q. He was doing all he could, was he not, to get off of the track when you struck him?

"A. Yes, when I struck him.   I did all I could to stop the car before it hit the wagon.

"Examination by the Court:   I was not going very fast when I struck him.   The wagon was going about as fast as I can walk, and we were both going at about the same speed.

"Q. How long did that continue, that creeping and drifting along right together, how long did you go along with the wagon, about the same speed as the car, about how much distance?

"A. I can't tell.

"The Court: Measure it by objects here in the room.

"A. From here to the back end of the room.

"Q. From you to the back end of the room?

"*A.* Yes.
"*Q.* Did you go right along with the wagon?
"*A.* Yes.
"*Q.* Do you think as far as that?
"*A.* Yes, but I can't remember.
"*Q.* Just as you remember it?
"*A.* It was like that, more or less.
"*Q.* Something like that?
"*A.* Yes, sir."

No one pretends that plaintiff was a trespasser in driving on or between the rails of defendant's track. We assume that no one will contend that it was the right of defendant to push him off the track either before or after he attempted to leave it. Under the circumstances, the relative duties of the plaintiff and the motorman were plain. It was plaintiff's duty to leave the track with reasonable expedition, and it was defendant's duty—the motorman's duty—seeing the effort plaintiff was making, the car with its passengers and the wagon with plaintiff being in no danger, to delay until the wagon had left the track. See *Manor* v. *Railway Co.*, 118 Mich. 1 (76 N. W. 139); *Rouse* v. *Railway*, 128 Mich. 149 (87 N. W. 68); *Hibbler* v. *Railway*, 172 Mich. 368 (137 N. W. 719).

There is no testimony tending to prove that plaintiff did not perform his duty. In determining whether the motorman performed his duty, there was involved no question of plaintiff's negligence. It is obvious, however, that the jury may have concluded that plaintiff "could have driven that rack off the track and cleared the car"—"that he could, by the use of diligence, have cleared this track far enough to allow the car to pass, having time to do so and having warning of the approach of the car," and, having so concluded, returned a verdict for defendant, under the instructions. In the respect indicated, the instructions were erroneous and probably prejudicial to plaintiff.

As the case must go down for a new trial, we notice

the assignments of error based upon the refusal of the court to give requested instructions. The refusal of the court to give these instructions was not error. The case is wholly different from *Bowen* v. *Railway Co.*, 54 Mich. 496 (20 N. W. 559, 52 Am. Rep. 822), *Wallace* v. *Railway Co.*, 58 Mich. 231 (24 N. W. 870), *Laughlin* v. *Railway Co.*, 62 Mich. 220 (28 N. W. 873), which are cited by plaintiff. It is immaterial, in view of the admitted facts in this case, who was responsible for the condition of the street. The street, outside of the tracks, was not impassable. Plaintiff drove upon the tracks for his own convenience, knowing that he must leave them whenever a car approached him. It is not claimed that, having left the track, there was not abundant room to drive in safety alongside the tracks.

The obstruction caused by the snow and ice hindered him, in some degree, in getting off the tracks —it delayed him. The motorman knew this, and was bound to operate the car with reference to all the circumstances, including the condition of the street, which appeared to affect, or to be liable to affect, the matter of a safe passage. One circumstance was that, because of the condition of the street, the rear wheels of the empty wagon might slip and slide along the rails and on the side of the obstruction in the street after the horse and the front wheels had cleared the tracks.

The judgment is reversed, and a new trial granted.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, STONE, and BIRD, JJ., concurred.