McNEAL *v.* DETROIT UNITED RAILWAY.

1. STREET RAILWAYS—AUTOMOBILES—NEGLIGENCE QUESTION FOR JURY.

In an action by the owner of an automobile against a street railroad company for damages for personal injuries and for injury to his automobile caused by the automobile being struck in the rear as plaintiff was proceeding on the track but was slowing up to speak to a man on the sidewalk, *held,* that it was a jury question whether defendant was guilty of negligence and plaintiff of contributory negligence.

2. SAME—INSTRUCTIONS—PREPONDERANCE OF EVIDENCE.

The refusal of instructions on the preponderance of evidence on behalf of defendant in an action for personal injuries, is not error where the court instructs that before one can recover under a claim of negligence, he must show and establish by proofs in the case the negligence of the person charged, and that it is left for the jury to determine whether or not plaintiff has shown by the "fair preponderance" of evidence that in what he did at the time of the accident he exercised that degree of care and caution that an ordinarily prudent person would exercise under like circumstances.

Error to Wayne; Mandell, J. Submitted April 20, 1917. (Docket No. 144.) Decided September 27, 1917.

Case by John S. McNeal against the Detroit United Railway for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Corliss, Leete & Moody* (*Benjamin S. Pagel,* of counsel), for appellant.

*Harold McIntyre,* for appellee.

OSTRANDER, J. Plaintiff was driving his motor car on defendant's track. One reason for doing so was

that between the tracks and the curb the presence of snow affected ease and comfort of travel.   Defendant's street car, following plaintiff's car, struck it, injuring the car, and injuring the plaintiff.   Plaintiff says defendant's servant negligently drove the street car upon him.   It is defendant's claim that plaintiff's negligence alone caused the injury, that no negligence on the part of defendant's agent is made out, and therefore a verdict for defendant should have been directed.   Error is also assigned upon the refusal of the court to give certain preferred instructions to the jury.

In any view, the issue is a narrow one.   Defendant's agent saw the plaintiff's car, and claims to have directed the movement of the street car in conformity with the visible and probable movements of plaintiff's car, at the same time clamoring with the gong for the right of way.   Plaintiff, he says, without apparent reason or excuse, diminished the speed of his car, bringing it almost to a stop, when he was justified in assuming that the speed of the car would be increased. The street car was a few feet in the rear and could not be stopped, although proper efforts were made to stop it.   Add to this the claim that plaintiff, if he did not know, ought to have known, that a street car was behind him, and defendant's case is, in substance, presented.

It is well enough to more carefully detail plaintiff's actions as he himself described them.   He was calling upon customers.   He called on one at the southwest corner of Pallister and Hamilton, driving his car to the curb on Hamilton and stopping the motor.   His call occupied 10 or 15 minutes of time.   He looked for a car, about half a square, about 175 feet, and saw none, cranked his car, and drove it out obliquely upon the street car track—the west or south-bound track.

"*Q.* I wonder how you limited your vision to half a block?

"*A.* I may have glanced a mile and a half up that street.

"*Q.* You did not see any street car?

"*A.* I did not say that, but there was no street car in my immediate vicinity.   *   *   *

"*Q.* How many miles an hour were you driving as you drove down the car track?

"*A.* Going very slowly.

"*Q.* How many miles an hour were you going from the time you got on the track until you commenced to slow up—what rate of speed were you going?

"*A.* Five or six miles an hour.   *   *   *   When I got to the corner of Bethune, the man I wanted to stop for was on the sidewalk between Pallister and Bethune, the same block that I was passing.  I should say he was two-thirds of the way from Bethune street to Pallister.  I passed him, and turned up into where the snow was out of Bethune in the section.

"*Q.* What part of Bethune were you on when you were hit?  In the middle or the north or south side of it?

"*A.* A little bit to the south of the center.

"*Q.* So your automobile was still running at the time it was hit?

"*A.* Yes, sir.

"*Q.* Still moving forward?

"*A.* Yes, sir.

"*Q.* What rate of speed—how many miles per hour was it going when it was struck?

"*A.* Very slowly.

"*Q.* Three or four miles an hour?

"*A.* I should approximate about that.

"*Q.* Were you struck near the center of Bethune?

"*A.* Just below the center.

"*Q.* Where was it, with reference to Bethune avenue, that you attempted to slow your car down first?

"*A.* Right at Bethune avenue.

"*Q.* The north side of Bethune, or the center of the street?

"*A.* About the center of the street.

"*Q.* You had only traveled a distance of five or six or seven feet from the time you commenced to slow down until you were struck?

"*A.* A little more than that.  To make it slow you

shut off the gas. I did not leave my engine running. It would not stop it. I would not put so much effort on; that is all. It was a two-speed car; there was only two speeds to it.

"Q. How many feet did you run from the time you shut off the gas until you were struck? Was it five or six or more?

"A. Well, my gas was not shut off entirely.

"Q. From the time you did whatever you did—I do not care what it was—from the time you started to stop until you were struck, did you run five or six feet, or more?

"A. I would approximate it eight or ten feet.

"Q. You were running during that time, in the process of slowing up, at the rate of three or four miles an hour?

"A. I had not got under headway from where I started up on Pallister street. I think I must have been running seven; it may have been five on the street. When I started to stop, I was going four or five miles. When I got struck, I was running at that rate of speed. My car went 17 feet from the point where it was struck until it came to a standstill; that is, including the length of my own car. My automobile, when it came to a standstill, was off the track entirely. The street car had not entirely passed it; the head or front of the street car was ahead of my automobile; the back of the automobile behind it.

"Q. Your automobile would be about midway between the front end and the back end of the street car when you came to a standstill?

"A. It was nearer the front end.

"Q. The motorman said the rail was slippery?

"A. Icy.

"Q. And the brakes would not hold?

"A. That is just what he said. There was no other reason for me to stop at the corner of Bethune, except to pick up that man. If he had not been there, I would have gone down the track.

"Q. At an increased rate of speed?

"A. Undoubtedly."

This testimony was given upon his cross-examination. He did not look for a car after he entered his

own car; did not hear the approach of the car, nor any warning signal of its approach. Somewhat similar situations have before this arisen. *Ablard* v. *Railway*, 139 Mich. 248 (102 N. W. 741) ; *Clark* v. *Traction Co.*, 167 Mich. 694 (133 N. W. 927) ; *King* v. *Railway Co.*, 176 Mich. 645 (143 N. W. 36) ; *Wingert* v. *Railway*, 177 Mich. 199 (142 N. W. 1063) ; *Hibbler* v. *Railway*, 172 Mich. 368 (137 N. W. 719) ; *Manor* v. *Railway Co.*, 118 Mich. 1 (76 N. W. 139) ; *Rouse* v. *Railway*, 128 Mich. 149 (87 N. W. 68) ; *Westphal* v. *Railway Co.*, 134 Mich. 239 (76 N. W. 19). There can be, and in fact is, no particular dispute about the relative rights and duties of the parties. Plaintiff alleges the failure of defendant to give him timely notice of the approach of the street car, failed to propel its car at a reasonable and proper rate of speed, and failure to avoid collision with vehicles traveling upon the highway. The question is whether it can be said as matter of law that the failure of either to perform admitted duty, unaffected by a like failure by the other, caused the trouble. There is no testimony tending to prove the rate of the speed of the street car, except that of the motorman, who says it moved behind plaintiff's car from Pallister to Bethune, before it became necessary to apply the brakes and stop the car, at a rate of four or five miles an hour. Inferentially, plaintiff, in estimating the speed at which his car was moving, was also estimating the speed of the street car. The street car did overtake and injure plaintiff's car. Tracks were black, wet, and slippery. Whether plaintiff heard the warnings given, the motorman could not certainly know. He drove the street car at a distance of from ten to fifteen feet behind plaintiff's car. As conditions were, it could not have been stopped in that distance. I am impressed that the case was for a jury, and that it was not error to refuse a directed verdict for defendant.

The charge of the court was fair.   Counsel for appellant, having framed requests in which the term "preponderance of evidence" is employed, finds fault because they were not given.   The court advised the jury that, before one can recover under a claim of negligence, he must show and establish by the proofs in the case the negligence of the person charged.   The jury was instructed, also, that it was left to it to determine:

"Whether or not the plaintiff has shown by a fair preponderance of the proofs that in and about what he did on that occasion he did exercise that degree of care and caution that an ordinarily prudent person would under like circumstances."

No reversible error is made to appear, and the judgment is therefore affirmed.

Kuhn, C. J., and Stone, Bird, Moore, Steere, Brooke, and Fellows, JJ., concurred.